MUTUAL LIFE INS. CO. OF NEW YORK v. HILTON-GREEN et al.

(Circuit Court of Appeals, Fifth Circuit. January 17, 1914.)

1. INSURANCE (§ 265*)—AVOIDANCE OF POLICY FOR FALSE REPRESENTATIONS.

Where a life insurance policy provided that all statements by insured should, in the absence of fraud, be deemed representations and not warranties, it was not avoided by false representations made by insured unless they were made fraudulently, with knowledge, actual or imputed, of their falsity, when he made them, and were material to the risk, tending to influence the insurer to write the policy when, if their falsity had been known to it, it might not have done so.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 560; Dec. Dig. § 265.*]

2. INSURANCE (§ 292*)—AVOIDANCE OF POLICY FOR FALSE REPRESENTATIONS.

Representations by an applicant for insurance that he had been examined by the insurer's medical examiner, and that no previous application by him had been rejected and passed upon unfavorably, which were untrue to his knowledge, avoided the policy, unless the insurer was estopped to rely thereon by reason of its knowledge of their falsity.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 691, 692; Dec. Dig. § 292.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INSURANCE (§ 378*)—FALSE REPRESENTATIONS—KNOWLEDGE OF AGENT IMPUTED TO COMPANY.

Under Gen. St. Fla. 1906, § 2765, providing that every person receiving money for an insurance company for any contract of insurance made by him, or who directly or indirectly makes or causes to be made any contract of insurance, shall be deemed to all intents and purposes an agent or representative of such company, the knowledge of a company's managing and soliciting agents and medical examiners of the falsity of representations by insured was chargeable to the company, in the absence of collusion between them and insured to defraud the company, though acquired in connection with the soliciting and examining of insured for another company; such previous transaction having been of recent happening, and the knowledge not having passed out of the recollection of such agents, but having been rehearsed during the examination for the subsequent policy and when the application therefor was taken, where the only limitation in the policy on the authority of agents was a provision that they were not authorized to modify the policy or extend the time for paying a premium, especially where the policy also provided that representations in the absence of fraud should not be deemed warranties.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 968–997; Dec. Dig. § 378.*]

In Error to the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Action by L. Hilton-Green and another, as executors of C. L. Wiggins, deceased, against the Mutual Life Insurance Company of New York. Judgment for plaintiffs, and defendant brings error. Affirmed. See, also, 202 Fed. 113, 120 C. C. A. 267.

This was an action to recover upon four policies of life insurance, issued by the plaintiff in error (defendant in the trial court) at one and the same time to the intestate. The suit was instituted in the Circuit Court of the First Judicial Circuit of Florida, and removed to the District Court of the United States for the Northern District of Florida. It was twice tried in that court, each trial resulting in a verdict for the plaintiff for the amount of the four policies with interest and attorneys' fees.

The first judgment was reversed by this court because the policies sued on were erroneously held by the District Judge on the first trial to be Alabama contracts, which, under the statute of that state, made them noncontestable for any cause after two annual premiums had been paid. No other question was decided on the former appeal. The opinion of the court appears in 202 Fed. 113, 120 C. C. A. 267.

Upon the second trial, to review the judgment in which the present writ of error is taken, the court below held that the Florida law governed the policies, and other questions only are now presented for decision. They arise entirely out of false statements alleged to have been made or ratified by the insured in the application for the policies and in the reports of the two medical examiners of the defendant, and which the defendant contended avoided the policies. The alleged false answers related to the insured's present and past health history; as to previous illnesses, surgical operations, consultations with physicians, hospital treatment, etc.; also, that he had been examined by the defendant's medical examiners, and that the examiners had correctly recorded his answers; and that he had never applied for other insurance and been rejected or his application not passed upon favorably. The alleged false statements were made the subjects of numerous special pleas by the defendant, to which the plaintiff replied by taking issue thereon and also by alleging knowledge of the falsity of the statements relied upon, on the part of the defendant, through its agents and examiners who were instrumental in writing the policies for it. No questions with relation to the pleadings are assigned as error. The errors relied upon relate altogether to exceptions to the court's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

oral charge, and to the refusal of certain charges requested by the defendant. There are 23 errors assigned and relied upon for a reversal, all of which have been examined by us. We feel that clearness of presentation will be accomplished rather by a general statement of our views respecting them than by a detailed consideration of each assignment.

George W. P. Whip, Emmett Wilson, and Philip D. Beall, all of Pensacola, Fla., for plaintiff in error.

W. A. Blount, A. C. Blount, Jr., and F. B. Carter, all of Pensacola, Fla., for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). The main questions considered on the trial in the court below, and about which the errors insisted upon here relate, were: (1) Whether the alleged false statements must have been fraudulently made by the insured, in order to be availed of by the insurer; (2) whether they must have been material to the risk to have that effect; (3) whether they or any of them were, in fact, material to the risk; (4) whether knowledge of the falsity of the statements made by the insured on which defendant relies, if proven, would be the knowledge of the defendant and estop it from asserting the invalidity of the policies for that reason; and (5) whether the defendant's agents or medical examiners are shown to have had such knowledge.

[1] 1. Each of the policies was alike in form and in its conditions and provisions. Each contained this stipulation:

"All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

When the language of a policy by its terms excludes warranties, it would seem that it leaves false representations made by the insured with substantially the status that they would have with relation to the offense of obtaining money by false pretenses. In order to avoid a contract of insurance, because a party to it was induced to enter into it by the false representations of the other party to it, it must be made to appear that the representations were untrue; that they were known to be untrue by the party making them; that they were material inducements to the party, to whom they were made, to enter into the contract; and that the party to whom they were made relied upon their truth, which implies that he was unaware of their falsity.

In the case of Ætna Life Ins. Co. v. Outlaw, 194 Fed. 862, 114 C. C. A. 608, the Circuit Court of Appeals for the Fourth Circuit said of a policy containing a like stipulation:

"It was decided by the Circuit Court of Appeals of the Eighth Circuit, in the case of Rice v. Fidelity & Deposit Company of Maryland, 103 Fed. 427, 43 C. C. A. 270, that: 'In insurance a representation is a statement by the applicant to the insurer regarding a fact material to the proposed insurance; and it must be not only false, but fraudulent, to defeat the policy. A warranty, in the law of insurance, is a binding agreement that the facts stated by the applicant are true. It is a part of the contract, a condition precedent to recovery upon it, and its falsity in any particular is fatal to an action upon the policy.' Accepting this as the definition of a representation, it follows that, in order for a representation, under the terms of this policy, to serve as a

defense, it must have been knowingly false, and therefore fraudulent. Unless so knowingly false and fraudulent, it could not be availed of by the insurance company as a defense."

In the case of Pelican v. Mutual Life Insurance Co., 44 Mont. 277, 119 Pac. 778, the court said:

"An application for a policy provided that all statements made by the insured should, in the absence of fraud, be deemed representations and not warranties, and that no such statement of the insured should avoid or be used in defense to a claim under the policy, unless contained in the written application, etc. It also recited that all of the answers to the medical examiner were true and were offered as inducements to the issue of the policy. Held, that answers to questions in the application as to insured's prior health history were representations and not warranties, and the falsity thereof would not avoid the policy unless fraudulent, under Rev. Codes, 5043, providing that the language of the policy must be construed most strongly against insurer."

Section 5043, Revised Code, referred to in the citation, and declaring that the language of the policy must be construed most strongly against the pleader, being merely declaratory of the rule of construction as to insurance policies in the absence of statute, does not diminish the weight of this authority.

In the case of Penn Mutual Co. v. Trust Co., 73 Fed. 653, 19 C. C. A. 316, 38 L. R. A. 33, 70, Circuit Judge Taft held that where a representation was by a statute required to be made "in bad faith," to be available to the insurance company, nothing short of an actual intent to mislead or deceive would suffice; that a misstatement, honestly made, through inadvertence or even gross forgetfulness and carelessness, was not enough.

We are of the opinion that, under the language of these policies, they could be avoided because of false representations made by the insured, only if such representations were fraudulently made, i. e., with knowledge, actual or imputed, upon the assured's part, of their falsity when he made them.

2. We also think that the false representations relied upon to avoid the policies must have been material to the risk, tending to influence the insurer to write the policies, when, if their falsity had been known to it, it might not have done so. The peculiar stipulation of the policies themselves excludes the idea that the representations made by the insured were to be considered warranties, unless they were fraudulently made. If not to be construed as warranties, then, in order to avoid the policies, they must have been material to the risk.

In the case of Ætna Life Ins. Co. v. Outlaw, 194 Fed. 862, 863, 114 C. C. A. 608, 609, the Circuit Court of Appeals for the Fourth Circuit said:

"The distinction between a warranty and a representation in an application for an insurance policy has by a number of decisions been stated to be that, if the statements are warranted, they must be true in every particular, whether material or immaterial; whereas, if the statements are representations, incorrectness in an immaterial matter will not avoid the policy, although, if incorrect in a material matter, the policy will be avoided."

We hold that, under the language of the policies involved in this suit, the defendant, to avoid the policies for false representations, must

establish their falsity, materiality, and the knowledge of the insured, actual or imputed, of their falsity.

3. So far as the alleged false representations related to the insured's previous and present condition of health, as to whether he had suffered from indigestion or from a weak and diseased heart, and whether he was then in good health, we think that the issues were properly left as questions of fact to the jury, both as to the falsity and as to the materiality of these representations. So we think the materiality of the omission of the insured to mention the history of the impacted tooth and the operation for its removal, and the visits of the insured to Hot Springs, Montgomery, and Atlanta, in pursuit of treatment for what turned out to be an inverted tooth, was a question for the jury to determine, under the evidence disclosed in the record.

[2] This leaves for consideration the representation of the insured that he had been examined by Dr. Turberville, defendant's medical examiner, and that the answers recorded by the medical examiner in his report were correct. In truth, there was no such examination had, and the insured must have known that there was none, and the representation that there had been one was a material one. So with regard to the representation of the insured that there had been no previous application for insurance made by him and rejected or not passed upon favorably by the insurance company. This was untrue, must have been known to have been untrue by the insured when he made it, and it was material. Either of these two last representations would be sufficient to avoid the policies, unless the defendant is estopped to rely upon them, by reason of its knowledge of their falsity. It had such knowledge, if at all, because of the knowledge of its agents and examiners, who handled the matter for it.

[3] 4. This brings us to the inquiry as to whether defendant is chargeable with the knowledge of its agents, Hogue and Torrey, and its medical examiners, Kirkpatrick and Turberville, who reported to it that they had examined the insured, and facts indicating that he was an acceptable risk.

In considering this legal question, two facts, peculiar to this case, are to be noticed: (a) The effect of the Florida statute, and (b) the language of the policies sued upon.

(a) Section 2765 of the General Statutes of Florida is as follows:

"Sec. 2765. Agents.—Any person or firm in this state, who receives or receipts for any money on account of or for any contract of insurance made by him or them, or for such insurance company, association, firm or individual, aforesaid, or who receives or receipts for money from other persons to be transmitted to any such company, association, firm or individual, aforesaid, for a policy of insurance, or any renewal thereof, although such policy of insurance is not signed by him or them, as agent or representative of such company, association, firm or individual, or who in anywise, directly or indirectly, makes or causes to be made, any contract of insurance for or on account of such insurance company, association, firm or individual, shall be deemed to all intents and purposes an agent or representative of such company, association, firm or individual."

In the absence of such a statute and under different language in the policies, the case of New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934, relied upon by the plaintiff in error,

would seem controlling of this case. However, effect must be given to the statute and to the language of the policies.

In the later case of Continental Ins. Co. v. Chamberlin, 132 U. S. 304–310, 10 Sup. Ct. 87, 89 (33 L. Ed. 341), the Supreme Court considered a similar statute of Iowa, and distinguished the case of Insurance Co. v. Fletcher, supra, from one where such a statute controlled, and declined to apply the rule laid down in the Fletcher Case to the case then under their consideration. The court said, referring to such a statute:

"This statute was in force at the time the application for the policy in suit was taken, and therefore governs the present case. It dispenses with any inquiry as to whether the application or the policy, either expressly or by necessary implication, made Boak the agent of the assured in taking such application. By force of the statute, he was the agent of the company in soliciting and procuring the application. He could not, by any act of his, shake off the character of agent for the company. Nor could the company by any provision in the application or policy convert him into an agent of the assured. If it could, then the object of the statute would be defeated. In his capacity as agent of the insurance company he filled up the application—something that he was not bound to do, but which service, if he chose to render it, was within the scope of his authority as agent. If it be said that, by reason of his signing the application, after it had been prepared, Stevens is to be held as having stipulated that the company should not be bound by his verbal statements and representations to its agent, he did not agree that the writing of the answers to questions contained in the application should be deemed wholly his act, and not, in any sense, the act of the company, by its authorized agent. His act in writing the answer, which is alleged to be untrue, was, under the circumstances, the act of the company. If he had applied in person, to the home office, for insurance, stating in response to the question as to other insurance the same facts communicated by him to Boak, and the company, by its principal officer, having authority in the premises, had then written the answer 'No other,' telling the applicant that such was the proper answer to be made, it could not be doubted that the company would be estopped to say that insurance in co-operative societies was insurance of the kind to which the question referred, and about which it desired information before consummating the contract. The same result must follow where negotiations for insurance are had, under like circumstances, between the assured and one who in fact, and by force of the law of the state where such negotiations take place, is the agent of the company, and not, in any sense, an agent of the applicant."

In the case of New York Life Ins. Co. v. Russell, 77 Fed. 94–104, 23 C. C. A. 43, 53, the Circuit Court of Appeals for the Eighth Circuit said of the effect to be given the language of a policy as against a similar statute of Nebraska:

"The obvious purpose of this clause, like that which declared the agent of the insurance companies should be deemed the agent of the insured, is to enable the insurance company to escape from the necessary obligations and liabilities imposed by the law of agency on a principal who commits the conduct of his business to an agent. It is designed to evade a fundamental rule of the law of agency, and to shear its acknowledged agents of their appropriate and accustomed powers and duties, and impose them on the insured. If this application is to receive the construction contended for, no one can safely transact business with an agent of the company; for, while he would be bound by his acts and representations and any information communicated to him by the agent, the company will not be bound by the acts or representations of its agent and any information communicated to him in the conduct of the business of his agency. Under such a rule, the rights and obligations of the contracting parties would not be reciprocal; contracts made with the company's agents would be one-sided; and the company could, at its own

election, avail itself of the acts and representations of its agents when it was profitable to do so, and repudiate them when they were likely to prove burdensome. The company cannot play fast and loose in this manner. The persons who are authorized by the company to solicit insurance, take applications, or receive premiums in Nebraska, are made by statute the agents of the company 'to all intents and purposes'; and it is not within the power of the company to shear these statutory agents of the powers and authority with which the law, for the protection of the public dealing with the company, invests them. These powers are precisely those which an agent of an insurance company possesses, upon whose powers and authority no special limitations have been imposed. * * *

"Insurance companies perfectly understand the fact that these applications, which are framed by themselves, and furnished to their agents, are filled up, and the answers to the questions written down, by their agents, and that every applicant accepts without question the advice, direction, and assurance of the agents in all matters relating to the preparation of the application. This is a part of the duty of such agents, and the applicant has a right to assume that they will discharge it intelligently and honestly. He has a right to assume, also, that the agent will honestly and faithfully discharge his duty to his principal. In this case it was the duty of the company's medical examiner to make the report called for by the clause of the application last quoted, if the answer to the question and the information communicated to the medical examiner made such report necessary. This was a duty required of the medical examiner by the company. It would be unprecedented and unreasonable for an applicant to take into his own hands the preparation of the medical examiner's report, and, in doing so, disregard the express advice and direction of the company's medical examiner. * * *

"Under the Nebraska statute, the agents and medical examiner of the defendant company were 'to all intents and purposes' the agents of the company; and, in their respective spheres, they possessed all the powers and authority conferred on agents and medical examiners of insurance companies by an unqualified appointment as such. It results that the information communicated by the applicant to the company's agents and medical examiner was, in contemplation of law, communicated to the company itself; and the company, therefore, having issued the policy with knowledge of all the facts, will not be heard to defend upon the ground that these facts were not fully set out in the report of its agents or medical examiner. We concur fully in the conclusion reached by the learned judge who tried the case at the circuit, whose opinion is inserted in the statement of the case. The judgment of the Circuit Court is affirmed."

In view of the Florida statute, we think these two cases are controlling of this case, rather than is the case of New York Life Ins. Co. v. Fletcher, which plaintiff in error relies upon. The statute prescribes that every person who receives money for an insurance company in payment of a contract of insurance, or who directly or indirectly causes to be made any contract of insurance, shall be deemed to all intents and purposes an agent or representative of such company. Under this description, we think Torrey, the defendant's Mobile manager, Hogue, the soliciting agent, and the two medical examiners were agents of the defendant to all intents and purposes, and so, for the purpose of charging it with notice of what they knew, when the policies were written.

(b) Again, the language of the policies in this case differs from that of the policy in the case of Life Ins. Co. v. Fletcher, supra. In that case the policy contained a stipulation:

"That the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office."

Of this stipulation the court, in that case, said:

"The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations expressed therein."

And again:

"The present case is very different from Insurance Co. v. Wilkinson, 13 Wall. 222 [20 L. Ed. 617], and from Insurance Co. v. Mahone, 21 Wall. 152 [22 L. Ed. 593]. In neither of these cases was any limitation upon the power of the agent brought to the notice of the assured. * * * Where such agents, not limited in their authority, undertake to prepare applications and take down answers, they will be deemed as acting for the companies. In such cases it may well be held that the description of the risk, though nominally proceeding from the assured, should be regarded as the act of the company. Nothing in these views has any bearing upon the present case. Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which, as we have stated, he must be presumed to have read. He is therefore bound by its statements."

In the case of Ætna Life Ins. Co. v. Moore (decided December 22, 1913) 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. ——, the Supreme Court of the United States said:

"The medical examiner, as we have seen, put down the answer, 'No,' to the question asked Salgue as to whether he had heart disease, after being informed by Salgue that he (Salgue) had been told by physicians that his heart was affected. It appears from the evidence that the other answers of Salgue in his application were written down by the agent of the company; and there is testimony for and against the fact that Salgue informed the agent of the opinion entertained of him by his physicians, and that he also informed the agent of other applications for insurance. It is hence contended that the agent, not Salgue, is responsible for the positive character of the answers, and that the insurance company is estopped by this action of the agent and by his knowledge of the actual conditions and circumstances. It is therefore further contended that the case comes within the principle of the cases which establish that, where the agent of the company prepares the application or makes representations to the assured as to the character and effect of the statements of the application, he will be regarded in so doing as the agent of the company, and not the agent of the insured. Among the cases cited to sustain the principle are the following in this court: Union Mutual Life Ins. Co. v. Wilkinson, 13 Wall. 222 [20 L. Ed. 617]; American Life Ins. Co. v. Mahone, 21 Wall. 152 [22 L. Ed. 593]; New Jersey Mutual Life Ins. Co. v. Baker, 94 U. S. 610 [24 L. Ed. 268]; Continental Life Ins. Co. v. Chamberlain, 132 U. S. 304 [10 Sup. Ct. 87, 33 L. Ed. 341]. German-American Life Ass'n v. Farley [102 Ga. 720, 29 S. E. 615], supra, is also cited, and, being a Georgia case, its authority is especially urged.

"There are, however, later cases which enforce the provisions of a policy, and we have seen that it was agreed in the policy under review 'that no statement or declaration made to any agent, examiner or other person, and not contained in' the application, should 'be taken or construed as having been made to or brought to the notice or knowledge of' the company, 'or as charging it with any liability by reason thereof.' And he (Salgue) expressed his understanding to be that the company or one or more of its executive officers, and no other person, could grant insurance or make any agreement binding upon the company.

"The competency of applicants for insurance to make such agreements, and that they are binding when made, is decided by Northern Assur. Co. v. Grand View Building Ass'n, 183 U. S. 308 [22 Sup. Ct. 133, 46 L. Ed. 213]; Northern Assur. Co. v. Grand View Building Ass'n, 203 U. S. 106 [27 Sup. Ct. 27, 51 L. Ed. 109]; Penman v. St. Paul Fire & Marine Ins. Co., 216 U. S. 311 [30 Sup. Ct. 312, 54 L. Ed. 493]."

So, in the case of the Prudential Ins. Co. v. Moore, 231 U. S. 560, 34 Sup. Ct. 191, 58 L. Ed. —— (decided by the same court the same day), the Supreme Court said:

"It is contended here, as in the Ætna Case, that the company is estopped by the knowledge of the agent, and the same cases are cited as were cited here. We answer here, as we answered there, that the terms of the policy constituted the contract of the parties and precluded variation of them by the agent."

In the case cited, the language of the policy, limiting the authority of the agent, was significantly different from that of the policies in this case. It was:

"No agent has power in behalf of the company to make or modify this or any contract of insurance, extending the time for paying a premium, to waive any forfeiture or to bind the company by making any promise, or making or receiving any presentation or information."

In this case the corresponding stipulation is "agents are not authorized to modify this policy or to extend the time for paying a premium." In the Moore Case the agent was debarred from making any contract of insurance in advance of the issue of the policy and from receiving any information so as to bind the company. In this case the only restriction upon the agent is against modifying the policy after it is issued and extending the time for paying a premium.

In each of these cases, as in the Fletcher Case, the Supreme Court held that the terms of the contract prevented the knowledge of the agent from estopping the insurance company, as it would have done in the absence of such a stipulation in the policy. In this, they are to be distinguished from this case. Neither in the application nor in the policies involved in this case is there any similar stipulation limiting the authority of the agent. The only limitation upon the power of the agent contained either in the application or in the policy is this:

"Agents are not authorized to modify this policy, or to extend the time for paying a premium."

The stipulation has no effect until after the contract of insurance has been consummated and the policy issued. It does not purport to limit the power of the agent or examiner in taking the application or the insured's answers or in reporting them to the company. The very provision upon which alone the Supreme Court based its conclusion in the Fletcher and in the Moore Cases is absent from the policies, in this case, and the court, in those cases, has said that, in the absence of some such stipulation, the knowledge of the agent or examiner would be that of the company.

The Moore Cases also differ from this case in that there was no Georgia statute similar to the Florida statute with reference to agency. The Supreme Court, after analyzing the then existing legislation in Georgia upon the subject of insurance, stated that its only effect to vary the law of insurance was in providing that in no case should an immaterial false statement operate to avoid the policy.

Again, the policies in the Moore Cases contained no stipulation that representations, in the absence of fraud, should not be deemed warranties, the effect of which, as construed by the courts, is to avoid the

policy only for willfully and knowingly false representations, though in the absence of such a stipulation, an innocently false but material representation would forfeit the contract.

Our conclusion is that under the language of the policies sued upon, and under the Florida statute heretofore set out, the knowledge of the defendant's agents, Torrey and Hogue, and of its examiners, Kirkpatrick and Turberville, would be binding upon it, unless there was collusion between such agents and the insured to defraud the principal. There was evidence in the record from which the jury might have inferred such collusion and also evidence from which it might have reached the contrary conclusion. The court below instructed the jury fully and properly as to the effect of such collusion, and, in view of this fact, its refusal to give the instruction requested by the defendant on this point becomes immaterial.

5. Finally, does the record show that the agents and examiners of defendant had knowledge at the time the policies were written of the falsity of the representations relied upon by defendant to avoid the policies? Both Torrey and Hogue knew of the insured's previous application to the Prudential Insurance Company, and of its result. Kirkpatrick also knew of the history of insured's impacted or inverted tooth and of the operation that removed it. Hogue knew that Turberville had made no examination of insured and that Kirkpatrick had made but a partial one. There is evidence from which the jury might have inferred that Hogue deceived the insured and the examiners as to what was required, and that there was no collusion between the insured and himself to falsely report the examination of the doctors. The evidence as to whether the insured had ever had heart disease or indigestion previous to his applying for the policies sued upon is too unsatisfactory to be a sufficient ground for avoiding the policies, even· if it were not known to defendant.

It is contended that the knowledge of defendant's agents and examiners was acquired in a different transaction, namely, the previous soliciting and examining of the insured for the Prudential Life Insurance Company, and, having been so acquired, should not bind the defendant. However, the previous transaction was of recent happening, and the knowledge then acquired is shown not to have passed out of the recollection of defendant's agents, but was rehearsed during his examination for the policies sued on and when his application therefor was taken; and, having been then within the actual knowledge of the agents, it should be imputed to the defendant, without reference to how. or when acquired. If it was then actually known, it was the duty of defendant's agents to have communicated it to defendant, and, if the jury found that there was no collusion on their part with the insured, the insurer would be chargeable with knowledge of what its agents then actually knew.

We think the charge of the court fairly presented the law, as we have stated it to be, to the jury, and that the refused instructions, when not consistent with it, were erroneous and properly refused. Taken in connection with the entire charge, we find no error in the court's reference to Hogue, as defendant's agent, or in the statement that the agents' and examiners' knowledge was imputable to the defendant.

The court also told the jury that collusion between the insured and the defendant's agents would prevent this imputation.

We find no error in the record.

Affirmed.