MUTUAL LIFE INS. CO. OF NEW YORK v. HILTON-GREEN et al.

(Circuit Court of Appeals, Fifth Circuit.   January 7, 1913.)

No. 2,427.

1. TRIAL (§ 141*)—PLACE OF CONTRACT—QUESTION FOR COURT OR JURY.
Where the facts are undisputed, the place where a contract was made is for the determination of the court as a question of law.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336;  Dec. Dig. § 141.*]

2. INSURANCE (§ 130*)—CONTRACT—WHAT CONSTITUTES—APPLICATION.
Where an application for a life policy provided that the application was the basis and part of the contract subject to the company's charter and that the applicant agreed that the statements and answers and all answers made to the insurer's medical examiners in connection with the application were warranted to be true and were offered to the company as a consideration of the contract, the medical examiners' report was a part of the application which was not complete until signed by insured after the medical examiner had made his report and the application with such report was delivered to the insurer's agent for transmission to the home office.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 195–202;  Dec. Dig. § 130.*]

3. INSURANCE (§ 125*)—CONTRACTS—EXECUTION—PLACE.
Decedent signed an application for additional insurance in Alabama. He then proceeded to his home in Florida, where the medical examination took place, and where he signed the final agreement that the statements made in the application and examiners' report were correct.   The completed report was then delivered to the soliciting agent in Florida, who took it to Alabama, from which place it was forwarded to defendant's home office, and later policies were issued thereon and sent to insurer's Florida agent, who caused the policies to be delivered to insured in Florida.   Held, that the mere signing of the application in Alabama did not make a contract subject to the laws of that state, but that the policies were Florida contracts and subject to Florida laws.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 173–175;  Dec. Dig. § 125.*
What law governs insurance policies, see notes to Corley v. Travelers' Protective Ass'n, 46 C. C. A. 287;  Globe & Rutgers Fire Ins. Co. v. David Moffat Co., 83 C. C. A. 100.]

In Error to the District Court of the United States for the Northern District of Florida;  Wm. B. Sheppard, Judge.

Action by L. Hilton-Green and another, as executors of the estate of C. L. Wiggins, deceased, against the Mutual Life Insurance Com-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany of New York. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

This cause comes to this court upon a writ of error to review the judgment of the District Court of the United States for the Northern District of Florida in favor of the defendants in error, who were the plaintiffs in the District Court. The plaintiffs sued the defendant insurance company upon four policies of life insurance, aggregating about $30,000, issued at one and the same time to the plaintiffs' intestate and constituting one transaction. The defendant in defense of the action relied upon certain alleged misrepresentations made by the insured to defendant as to the condition of his health at the time he applied for insurance, as to previous illnesses and previous consultations with physicians, as to the statement that he had in fact been examined by the medical examiners of the insurance company, and also as to previous applications made to other insurance companies, upon which no policies were issued to him. The alleged misrepresentations were contained in his application for the policies sued upon, and also in the medical examiners' report, certified to as correct by the applicant. The defendant interposed these defenses by separate and appropriate pleas. The plaintiffs replied to the pleas, among other things, that the application for the policies had been taken in Alabama, and that under the law of that state the policies became incontestable for any cause after the payment of two premiums, and that two premiums had in fact been paid. By the terms of the policies themselves, they became incontestable only after the lapse of two years from the date of their issue, which period had not expired at the time of the death of the insured. The court below submitted to the jury in its oral charge the issues arising under this replication, leaving it for the jury to determine whether or not the application was taken in Alabama, and directed the jury, in the event they found the application was taken in Alabama, to disregard the issues presented by the defendant's pleas, for the reason that the policy would then be incontestable; it being conceded that two premiums had been paid thereon during the lifetime of the insured. The defendant excepted to this part of the court's oral charge, and also to the refusal of the court to give written charges requested by it, asserting in effect that the application was to be construed as having been taken in Florida, and that the Alabama statute relied on by the plaintiffs was not applicable as the law of the case. If the exception of the defendant to the oral charge was too general, the question is properly presented by the exceptions to the action of the court below in refusing requested charges asserting the principle and upon which error is assigned. As we view the case, the rulings of the court on this issue are determinative of this appeal, and it is unnecessary to notice the other assignments of error.

The insured was a resident of Pine Barren, Fla. While upon an occasional business trip to Alabama, he was solicited by one J. C. Hogue, an insurance broker, to take out additional insurance. Hogue had previously attempted to write intestate in another company which had declined the risk. He then persuaded him to make application to the defendant, while he was traveling with him on a railroad train; the insured being on his way from Alabama to his home in Florida. The answers to the questions contained in the application were written out by Hogue at Flomaton, Ala., from information furnished him by the insured, and the insured at the same time and place signed the application and delivered it to Hogue, who was to complete it by having the blank reports of the medical examiners, which was attached, properly filled out, and then certified to by the insured as correct, before it was turned into the defendant to be acted upon. The insured then resumed his journey to his home in Florida, and Hogue his interrupted journey to Greenville, Ala. After Hogue had returned from that place, he went to Pine Barren, Fla., with the application signed by the insured, and caused two physicians to fill out and sign the medical reports, one at Pine Barren and one at Century, Fla. He then had the insured certify on the medical reports under his signature to the fact of the examination and the correctness of the answers. This was done by the insured at Pine Barren, Fla., and the application, thus completed, was turned over to Hogue, the insurance solicitor, by the insured at Pine Barren, Fla.

The insurance solicitor then took it to Mobile, Ala., from which place it was forwarded to the home office of the defendant. Thereupon the policies in suit were issued and sent from the defendant's home office to its agent at Jacksonville, Fla., who caused the policies to be delivered to the insured at his home at Pine Barren, Fla. This is the history of the transaction, as shown by the record.

Emmett Wilson, of Pensacola, Fla., for plaintiff in error.

W. A. Blount, A. C. Blount, Jr., and F. B. Carter, all of Pensacola, Fla., for defendants in error.

Before PARDEE, Circuit Judge, and FOSTER and GRUBB, District Judges.

GRUBB, District Judge (after stating the facts as above). It is conceded by the defendants in error that the contract of insurance was not an Alabama contract. The contention is that the application of the insured was taken in Alabama, and it is upon this that the applicability of the Alabama statute is conditioned. The material facts bearing upon this question are practically without dispute, and are as stated. If the mere signing of the application by the insured and its delivery in incomplete form to the insurance agent constitutes the taking of the application, it is clear that the application was taken in Alabama. If, on the other hand, the application cannot be said to be taken until its delivery to the defendant's agents in a completed form, according to the usual requirements of the company, to be forwarded to it for its acceptance or rejection, then the application was taken not in Alabama but in Florida. [1] Nor do we think that the determination of this question is a matter for the jury aided by the testimony of insurance experts. If the facts of the transaction are not in conflict, the place of the taking of the application in this case under its language became a question of law to be determined by the court. The application by its very terms becomes a part of the policies issued upon it, and it is therefore to be construed by the court as are all written contracts. In no other way is uniformity of construction obtainable.

[2] To properly construe the policies, it is essential to first determine what the application consists of, since, whatever that is, it becomes a part of the contract to be construed. The defendants in error contend that the medical examiners' report forms no part of the application, and that it was therefore complete when signed by the insured and turned over to the insurance solicitor at Flomaton. The language of the application is:

"This application made to the Mutual Life Insurance Company of New York is the basis and part of a proposed contract of insurance, subject to the charter of the company, and the laws of the state of New York. I hereby agree that all the following statements and answers, and all those that I make to the company's medical examiners, in continuation of this application, are by me warranted to be true and are offered to the company as a consideration of the contract which I hereby agree to accept, etc."

This language is inconsistent with the contention of defendants in error. The medical examiners' report is stated to be a continuation of the application, and is therefore a part of it. The statements made

by the applicant to the company's medical examiners and contained in their report are as much warranted by the applicant as are the statements made in the application signed by the applicant only. By the very terms of the application, applicant's statements made to the medical examiners and embodied in their report to the company "are offered to the company as a consideration" of the proposed contract of insurance by the applicant, just as are the statements made by the applicant without the intervention of the examiners. The application and medical examiners' report are physically attached to each other. The applicant is required to certify under his signature that his answers, as the medical examiners' report states them, are correctly recorded by the examiners. In view of the language of this application, we have no difficulty in reaching the conclusion that no application could be considered as having been taken until the medical examiners' report was filled out and certified as correct by the applicant.

It is said that the examiners are the agents of the insurance company, and that their report is for the exclusive benefit of the insurance company, and that the applicant's duties are at an end when he signs the application. The information furnished in the application itself is for the exclusive benefit of the company, as much so as is that contained in the examiners' report. In each case the applicant largely supplies the information furnished. So far as the family and personal history of the applicant is concerned, the medical examiner's function is that of an amanuensis only. Nor is it correct to say that the applicant, having signed the application, has no further duty to perform. On the contrary, after the examiner completes his report, the applicant is expressly required to certify that his answers, as incorporated in it by the examiner, are correct. The application is not complete even as to the applicant until he has done this. If it be conceded that the medical examiners solely represent the company in what they do, it still remains true that, after their task has been finished, the applicant is called upon to take the final step by certifying under his hand to the correctness of at least a part of what the examiners have done. Until this certificate has been affixed to the examiners' report, there is no application, such as is required by the company for submission to it for acceptance or rejection.

[3] Applying this principle to the facts of this case, the application, though signed in Alabama and there turned over by the applicant to the agent, was not then completed, nor was its delivery to the agent final, and for the purpose of transmission to the company for its action. It was understood between the insured and Hogue that it was incomplete and not ready for submission to the company. It was turned over to Hogue to give him the opportunity to complete it by taking the medical examiners' report, and, after having accomplished that, it was understood that it was to go back to the insured for his certificate. Hogue after receiving the application procured the examiners' report and then turned the application back to the insured for his certificate, which was thereupon given by him. All this was done in Florida, as appears without conflict from the record. The application consisted of two parts: (1) A request for insurance; and (2) the

furnishing of the information necessary to enable the company to pass upon the request. The request in this case was made in Alabama, but the other essential part of the application was completed in Florida. The application first became effective when both essentials were completed. One was as necessary as the other. The evidence shows that the application first became effective when delivered completed by the assured to Hogue at Pine Barren, Fla., after the examiners' report and applicant's certificate had been attached to it. The delivery at Flomaton was tentative, and not final, and in no proper sense can it be said, in view of the undisputed facts in the record, that the application was there taken.

The transmission of the application through the Mobile agent of the defendant to its home office becomes immaterial in view of the admitted fact that Hogue received the application for the company from the insured in Florida. The parties also contemplated that the policies should be delivered to the insured at his home in Florida, and this was afterwards done through the defendant's agent at Jacksonville, Fla. We think the court erred in submitting to the jury the determination of the place of the taking of the application.

We cannot say that the verdict of the jury for the defendants in error was not based on the incontestability of the policies, due to the conceded fact that two premiums had been paid on them by the insured, and a finding that the application was taken in Alabama, and that the Alabama statute ruled the case.

We need not consider whether it was competent for the Alabama Legislature to control by its enactment the construction of a New York or Florida contract against its express terms, when the contract was sought to be enforced in the federal court of a jurisdiction other than that of the state of Alabama, merely because a preliminary step to the making of a contract occurred in that state. Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832.

The judgment of the District Court is reversed, and the cause remanded for further proceedings.