## INDEPENDENCE INDEMNITY CO. v. GRANTS PASS & JOSEPHINE BANK.

Circuit Court of Appeals, Ninth Circuit. November 5, 1928.

No. 5568.

Wilbur, Beckett, Howell & Oppenheimer, of Portland, Or., for appellant.

Dey, Hampson & Nelson and George L. Buland, all of Portland, Or., and O. S. Blanchard, of Grants Pass, Or., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. Some months prior to February 19, 1927, the Oregon Construction Company entered into contracts with the cities of Grants Pass and Klamath Falls, in the state of Oregon, for the construction and laying of sewer systems for the two cities, and the Independence Indemnity Company executed surety bonds on behalf of the contractor for the faithful performance of these contracts. The bonds were executed by the indemnity company through Brownell-Slocum Insurance Agency, Inc., general agent for the indemnity company for the state of Oregon. The Grants Pass & Josephine Bank, of Grants Pass, advanced to the contractor the sum of $6,000 which was expended in the performance of the contracts, and took as security for the loan assignments of moneys to become due the contractor from the cities as work under the contracts progressed. On the above date, the contractor was in need of further funds for the prosecution of the work and applied to the bank for an additional loan, which the bank declined to make. Thereupon, H. C. Leigh, president of the Brownell-Slocum Insurance Agency, and the officer in charge of its affairs, visited Grants Pass, and as a result of this visit the

bank advanced $4,000 additional, taking the note of the contractor for the sum of $10,000. At the same time the indemnity company executed an indemnity contract reciting the loan of the $10,000 by the bank; that the indemnity company had executed the surety bonds to the two cities; that the sum of $6,000 had already been expended by the contractor in the performance of the work and that the additional $4,000 was intended for the like purpose; that the bank held certain assignments from the contractor for moneys to become due under the contracts and had surrendered these assignments to the indemnity company; and that the bank and the indemnity company had agreed that the indemnity company would save the bank harmless for the repayment of the loan according to the tenor of the promissory note. It was thereupon agreed that, in consideration of the premises, the indemnity company would save the bank harmless, and that all sums thereafter paid by the two cities on their respective contracts for work should be deposited with the bank for disbursement. This contract was signed, Independence Indemnity Company, by H. C. Leigh, attorney in fact, and the corporate seal was affixed. Leigh had theretofore held a power of attorney from the indemnity company authorizing him to execute certain undertakings on its behalf to the amount of $25,000, without being countersigned by any other person or persons; but this power was revoked prior to the execution of the indemnity agreement with the bank. Whether the bank had notice of the existence of the power of attorney or of its revocation does not appear.

After the execution of the indemnity agreement to the bank, work progressed under the sewer contracts until their completion about September 1, 1927. In March, 1927, the agency contract between the indemnity company and the Brownell-Slocum Insurance Agency, Inc., was terminated, and at about that time the indemnity company sent its representative to Portland to check up the office of the agency and to detect irregularities, if any such existed. This representative found a copy of the contract in suit among the files of the agency and criticized it severely; but there was no repudiation of the contract at that time, and the bank had no notice of any disclaimer of liability under it until late in the summer of 1927. When liability was disclaimed, the present suit was instituted by the bank against the indemnity company. The complaint is in the usual form in such cases, alleging the execution of the contract by the defendant and its nonperformance, and a copy of the contract is attached to the complaint as an exhibit. The answer denied the execution of the contract, denied that the instrument, a copy of which was attached to the complaint, was executed by the defendant, or by any person upon its behalf, or by any person with authority to execute it, and alleged affirmatively that the instrument claimed to be executed by the defendant, if executed at all, was not executed by the defendant, or by any person for or on its behalf, or with authority to execute the same. Upon the trial in the court below judgment was entered in favor of the plaintiff, and the defendant has appealed.

In the course of the trial, a witness for the appellee was asked if it was in the usual course of dealing of general agents of surety companies to handle the adjustment of claims, and the witness answered, over objection and exception, that it always is unless a special adjuster is appointed. The ruling of the court admitting this testimony is assigned as error. The question was a very general one. What was meant by handling the adjustment of claims is rather indefinite, and what was meant by the adjustment of claims is equally so. The witness apparently understood the inquiry to be whether general agents acted as adjusters for their companies, and such perhaps was the information sought. But the authority of adjusters is as varied and as hard to define as the authority of general agents. They may have or exercise much or little authority. In some states their authority is defined by statute, but in the absence of statutory definition their authority is a mere matter of private contract. They usually act under special instructions, and when they do their authority is, of course, measured by the instructions given, unless, as here, we are driven into the realm of ostensible or apparent authority. In other words, the fact that general agents for surety companies sometimes act as adjusters for their company, without further elucidation or explanation, tended in no way to explain or define their authority as general agents. For this reason the testimony might well have been excluded, but inasmuch as the court specifically instructed the jury that Leigh was without authority to execute the contract in suit on behalf of the appellant, the admission of the testimony was, at most, error without prejudice.

The court below instructed the jury generally on the question of the apparent or ostensible authority of the agent who executed the contract, and the appellant challenges the correctness of these instructions on sev-

eral grounds: First, because the contract in suit was executed by Leigh as attorney in fact and the authority of no other agent was involved; second, because the instructions permitted the jury to find against the appellant if they found from the testimony that the insurance agency at Portland had authority to execute the contract; third, because the instructions permitted the jury to find against the appellant on the theory of apparent authority of any of its agents to execute the contract, whereas the complaint was predicated upon an express authority; and, lastly, because the instructions permitted the jury to find against the appellant if the agent had apparent or ostensible authority to execute the contract, that an apparent or ostensible agency is based on estoppel, and that no estoppel was pleaded.

We will first consider the question of pleading. Where an action is brought on a contract made by an agent, it is both customary and proper to plead the contract as that of the principal, and if the execution of the contract is denied, the plaintiff must prove both its execution and the authority of the person by whom it was executed. This latter may be proved by any competent testimony, as by showing that the authority was directly conferred by the principal, or that the agent had apparent or ostensible authority, or that the contract has been ratified by the principal. As said by the court in Masters v. Walker, 89 Or. 526, 174 P. 1164:

"It is good pleading to allege that an act was done by the defendant, and it is competent to prove that averment by showing that the act was really done by an agent of the defendant thereunto duly authorized, or that it was afterward ratified by the defendant. * * *

"The ultimate question to be determined is whether the transaction is that of the defendant within the meaning of the law. One seeking to establish the affirmative of that proposition should allege it directly and not endeavor to arrive at the result by circumlocution or argumentative statement. The allegation may be proved by direct testimony or by evidence of facts from which the law draws the conclusion that the act was that of the principal."

The remaining objections to the charge call for little comment. Whether the contract in suit was the contract of the appellant corporation, was the controlling question at the trial. If it was the contract of the appellant, it mattered not how the agent executing the contract described himself; nor did it matter whether his name appeared on the contract at all. 2 C. J. 673. Thus, in Deakin v. Underwood, 37 Minn. 98, 33 N. W. 318, 5 Am. St. Rep. 827, authority to sell property was conferred upon A. B. Wilgus & Bro., a partnership composed of A. B. Wilgus and E. P. Wilgus, and the name of the principal was signed to the contract of sale by A. B. Wilgus, agent. It was there contended that the contract was invalid because not signed by the partnership as agents, but in answer to that contention the Supreme Court of Minnesota said:

"The defendant seems to overlook the fact that the contract is the act of the principal and not of the agent, and that the party to be bound is the former and not the latter. Hence the important question is whether the principal's name has been signed to the contract by one having authority to do so. That in this case, A. B. Wilgus, as a member of the firm of A. B. Wilgus & Bro., had, by virtue of the authority given the firm, power to execute this contract in the name of defendant, cannot be questioned, and it is wholly immaterial whether to that name he added 'by A. B. Wilgus & Bro.' or 'by A. B. Wilgus,' or nothing at all. An agent authorized to sign the name of his principal effectually binds him by simply fixing to the instrument the name of his principal, as if it were his personal act. The particular form of the execution is not material, if it be done in the name of the principal, and by one having authority in fact to execute the instrument."

We find no error in the record, and the judgment is affirmed.