LUCILLE F. PARSONS and J. LESTER PARSONS, her husband, *Plaintiffs in Error,* vs. FEDERAL REALTY CORPORATION, a Florida corporation, and NATIONAL SURETY COMPANY, a New York corporation authorized to do business in the State of Florida, *Defendants in Error.*

143 So. 912.

En Banc.

Opinion filed December 15, 1931.

Petition for rehearing granted February 2, 1932.

Opinion Rehearing filed September 29, 1932.

*William Otis Badger* (N.Y.) *Kurtz & Reed* and *Loftin, Stokes & Calkins,* for Plaintiffs in Error.

*Knight, Adair, Cooper & Osborne* and *Evans & Mershon,* for Defendants in Error.

DAVIS, J.—Upon the trial of an action at law before the Circuit Judge sitting without a jury, a jury trial having been waived, a general verdict in favor of the defendant, National Surety Company, was found in an action against such company on a bond alleged to have been executed by it to secure the payment of $100,000.00 by the Federal Realty Corporation to plaintiffs in error, who were the obligees named in the bond.

The bond sued on recites that it is made by the Federal Realty Corporation, as principal, and by the National Surety Company, as surety. It was not one of the regular printed form bonds prepared by the Surety Company and turned over to its agents for execution in its behalf, but appears to be a bond of an unusual and special character which was prepared by the attorney for the obligees to be executed by the Surety Company to meet the requirements of the particular transaction in which the bond was to be given. For the Surety Company it is signed, ''National Surety Company, by D. W. Raie, Attorney in Fact.'' The National Surety Company's seal appears to be attached. The issue which was raised by the pleadings, and upon which the verdict for defendants was entered by the Circuit Judge at the trial, is whether or not the bond sued on by the plaintiffs is such a bond as made the defendant National Surety Company liable thereon as a surety under the facts and circumstances of this particular case as disclosed by the pleadings and the evidence.

On this point there were special findings by the Circuit Judge in addition to the general verdict. These special findings, while only pertinent to be considered as indicating the process of reasoning followed by the Circuit Judge in reaching his general verdict, are to the effect that it had not been made to appear from the evidence that the agent, Raie, had authority to execute and deliver the bond in question; further, that if, notwithstanding this fact, it

should be contended that the bond ought to be upheld because the agent, Raie, had *apparent* authority to execute the bond sued on, and thereby to bind the Surety Company in the interest of an innocent third party, that nevertheless the court had found on that point that the circumstances shown to have surrounded the negotiations for the bond, as well as its execution and delivery, were such as put the plaintiffs, and those acting for the plaintiffs, upon inquiry as to the nature and extent of the agent's actual authority which did not authorize such an undertaking to be signed by him.*

After the verdict was rendered, plaintiffs moved for a new trial. Such motion for a new trial containing, as it does, appropriate grounds for that purpose, brings up for review the sufficiency of the evidence to sustain the findings of the judge. Such is the case in a common law action, when a jury has been waived. Alley v. Ball, 102 Fla. 1034, 136 Sou. Rep. 706.

It appears from the evidence that a real estate boom syndicate composed of M. R. Gano, of Philadelphia, and others, in August, 1925, through a sales agent, agreed to purchase the winter home of Mr. and Mrs. J. Lester Parsons, who were the plaintiffs in the Court below; that the agreed purchase price was $250,000.00,—$7,500.00 cash being paid down, $67,500.00 paid on closing the trade and the balance of $175,000.00 to be represented by a purchase money mortgage; that before the sale was completed Gano and associates (following the custom of boom transactions of this character) resold the property to Federal Realty Corporation for $307,000.00, out of which transaction Gano, and associates, expected to make a profit of $45,-000.00.

---

*The bond was in effect a contract of guaranty given to secure the payment of two notes, aggregating $100,000.00, executed by Federal Realty Corporation to Lucille F. Parsons and J. Lester Parsons, her husband, both of which were secured by a mortgage.

In carrying out the latter transaction Gano wished the deed from the Parsons to be made direct to Federal Realty Corporation. This Mrs. Parsons refused to do, stating that it was her property and that she would not convey it to Federal Realty Corporation without obtaining a surety bond, in addition to the mortgage which was proposed to be made on the premises to secure the balance of the purchase price. The title to the property was in Mrs. Parsons' name and she remained firm in her determination not to convey the property except upon the conditions which she had elected to exact.

Mrs. Parsons had come to Florida in connection with the sale and arrived about the last Monday in September. Her husband, J. Lester Parsons, was a man of wide experience, who had been in the fire insurance business for over twenty-five years, and was then the President of two fire insurance companies. Mr. Parsons did not come to Florida at the time of the closing of the sale, but Mrs. Parsons at that time had the services and advice of one Henry J. Wyatt, of New York City, an attorney associated with the Parsons insurance companies, who undertook to represent Mr. and Mrs. Parsons in connection with the deal. Mr. Wyatt was the individual who finally closed the entire transaction for Mr. and Mrs. Parsons after the departure of Mrs. Parsons for New York.

It appears that Mrs. Parsons, Mr. Wyatt, Mr. Gano, and a Mr. Reed, of the law firm of Kurtz & Reed, which law firm represented Mr. and Mrs. Parsons in Miami, met at the office of Kurtz & Reed to discuss and arrange for the closing of the sale and the delivery of deeds. Such meeting appears to have been held shortly after Mrs. Parsons' arrival in Miami. At this conference various conversations were had with reference to obtaining the character of bond insisted on by Mrs. Parsons, which was to secure the pay-

ment of the first two notes of Federal Realty Corporation mortgage.

It appears to have been understood from the start that a bond of the kind Mrs. Parsons wanted was unusual in character and that no ordinary agent of a surety company was authorized to write such a bond. This is indicated by the testimony of a man named Vanderpool, who appears to have represented two or three companies and who stated that he did not want to undertake to write the bond because it was not a customary bond and was out of the regular course.

This led to a solicitation of one Donald W. Raie, a general agent of the National Surety Company, to undertake the task of procuring such a bond to be executed by that company. Raie, it appears, lived at Fort Lauderdale, and was authorized to act as a general agent, but with limited authority, for the National Surety Company in Dade, Palm Beach and Broward Counties. Raie appears to have also held certain powers of attorney to execute instruments for the National Surety Company, as well as an appointment as agent under an agency agreement which contained rather broad powers, but which did not authorize him to execute bonds of any kind in excess of $50,000.00 without referring them to the home office of the surety company for specific authorization.

It appears that when first spoken to with reference to executing the kind of bond Mrs. Parsons wanted, that Raie then stated to those present that he did not have authority to execute such a bond without securing the written consent of the National Surety Company, and that it would also be necessary to have an application signed, as well as an indemnity agreement from the individuals who desired to have the bond, so that all of these papers could be sent to the home office of the National Surety Company in New York for approval. These papers were accordingly pre-

pared and appear to have been sent to New York by Raie.

But on Monday, October 5, 1925, Raie was called and told that it was essential that the bond be signed immediately, otherwise that the sale would not go through. At this time Raie was expecting a wire from the company approving the transaction and had given directions that if such a wire was received it should be sent to him in Miami. No such wire arrived and finally realizing that the only chance of writing the bond would be lost by the rescission of the trade and the departure of Mrs. Parsons for New York, Raie appears to have taken the chance of executing the bond on behalf of his principal, National Surety Company, knowing that he had not obtained the requested authority so to do, but believing that the application and other papers for it, which he had previously sent in, would be approved in due course by the surety company and thereby validate all that had been done.

But the Surety Company did not approve, and expressed its unwillingness to approve under any circumstances, unless the local agent could secure full liquid collateral. This disapproval was communicated to the agent about October 9, 1925, which was after the bond had already been executed without authority and delivered to the obligee on October 5th.

Subsequent to this, it appears that the National Surety Company's officers in New York took prompt steps to advise Mrs. Parsons and her husband that the bond had been executed without authority by Raie, their local agent at Fort Lauderdale, and that they would resist all efforts to enforce any liability upon it. The Circuit Judge found, and we think properly so, that the National Surety Company promptly denied liability and notified the plaintiffs to that effect, although it was some two months or more after the bond was actually executed that the higher officers of the National Surety Company took this action.

The reason for this delay is satisfactorily accounted for by the finding of the court that the defendant National Surety Company was not informed of the actual execution and delivery of the bond until more than two months had expired and that it acted promptly upon receipt of that information.

In disposing of the case we shall first consider the proper construction to be placed upon our statutes relating to surety companies' agents in this State. We do this because, if the contentions of the plaintiffs in error with regard to the construction of this statute are correct, then the statute itself fixes the liability of the Surety Company by the fact that the bond in truth actually signed and delivered by its agent, whether with authority so to do or not.

The statute relied on to have this effect (Section 6307 C. G. L., 4345 R. G. S.), reads as follows:

"AGENTS.—Every person who shall so far represent any surety company established in any other State as to receive or transmit applications for suretyship, or to receive for delivery bonds founded on application forwarded from this State, or otherwise to procure suretyship to be effected by such company upon the bonds of persons or corporations in this State, or upon bonds given to persons or corporations in this State, shall be deemed as acting as agent for said Company. (Chapter 3596, Acts of 1885, Sec. 5)."

Such statute has never before been considered, or construed, by this court, but a similar Florida statute relating to agent of insurance companies (Section 2765, Gen. Stats. 1906, now 6207 C. G. L. 1927, 4256 R. G. S. 1920) has been before the Supreme Court of the United States and was construed by that Court in Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 60 L. Ed. 1202, 36 Sup. Ct. Rep. 676. The insurance agents statute was also recently considered by the Circuit Court of Appeals for the 5th

Circuit in Pacific Mutual Life Ins. Co. of Cal. v. Barton, 50 Fed. (2nd) 362.

In both of the cases last mentioned, the Court said that the Florida statute relating to agents of insurance companies, Section 6207 C. G. L. *supra,* which undertakes to designate as .agents certain persons who in fact act for such companies in some particular, does not fix the *scope* of their authority as between the company and third persons, and certainly does not raise special agents, with limited authority, into general agents possessing unlimited power to bind the insurance company.

But the contention of the plaintiffs in error here is, that under the surety company agents statute (Section 6207 C. G. L.) when a surety company creates a general agent and authorizes him to receive or transmit applications for suretyship, or to' receive for delivery bonds grounded on applications forwarded from this State, or otherwise to procure suretyship to be effected by such company upon bonds of persons or corporations in this State, that such surety company is to' be deemed responsible for anything that the agent may actually do in executing a contract of suretyship, whether conventionally authorized thereunto or not, and regardless of any limitations on the agent's authority, and notwithstanding notice of limitations on the agency which, under the circumstances of a particular case, may be imputed to the particular party dealing with an agent.

Or, to express it another way, plaintiffs in error contend that by force and effect of the statute alone, there is a presumption of law that the agent coming within the terms of the statute, had authority to do the things he actually did in fact do, and that this presumption being one of law, is, by reason of the legal effect of the statute under which the agent was authorized to act and acted, an irrebuttable presumption, which neither admits of rebutting the fact

of agency, nor the extent of authority authorized to be exercised by the agent.

But it is obvious from a comparison of the Florida statute relating to agents for surety companies (Section 6307, C. G. L., 4345 R. G. S.) with the similar Florida statute relating to agents of insurance companies (Section 6207, 6222, C. G. L., 4256 R. G. S.) that both have a similar purpose in view, and should therefore receive a similar construction when their true meaning and legal effect is necessary to be decided in the course of a judicial proceeding involving a claim of liability against a company with regard to undertakings of the company alleged to have been entered into in this state through a statutory agent. See Lumber Co. vs. National Surety Company, 124 Iowa, 599, 100 N. W. 550.

Our statute relating to agents of insurance companies was construed and applied by this Court in American Fire Insurance Co. vs. King Lumber and Mfg. Co. 74 Fla. 130, 77 Sou. Rep. 168, and the holding of that case was approved by the Supreme Court of the United States in 250 U. S. 2, 63 L. Ed. 810, 39 Sup. Ct. Rep. 431. In that case this Court held that where fire insurance was procured on property in Florida by a broker who was a resident of this state, that the broker, who acted for the insurance company in obtaining information as to the subject insured, or who delivered the policy and collected the premium therefor, was, under the terms of the Florida statute above referred to, to be deemed, to all intents and purposes, an agent or representative of such insurance company in this state, regardless of conventional authority in the premises.

But the decision in that case did not hold that the effect of the Florida statute was to confer on the agent unlimited authority *ex proprio vigore* to bind the insurer so as to forbid inquiry into the facts as to the agent's actual authority in proper cases, and upon the theory that such was

the proper construction of the statute, the validity of the act was upheld by the Supreme Court of the United States as against a claim by the insurance company that it was violative of Section 1 of the Fourteenth Amendment to the Federal Constitution, because it created an irrebuttable presumption which had the effect of depriving it of its property without due process of law.

The statute relating to the agents of surety companies, as well as the statute relating to the agents of insurance companies, does appear to declare an irrebuttable presumption of law, but such a presumption as to the fact or status of agency only, on the part of the person who acts under the statutory particulars. It does not undertake to conclusively fix the scope and extent of the authority of agents as between the company and third persons. This appears to be the view of the Supreme Court of the United States as expressed in the Hilton-Green case, *supra,* with regard to insurance agents, and in that conclusion we are inclined to concur by placing the same construction on our statute controlling surety company agency.

But statutes of this character having for their object the regulation of the business of insurance and suretyship for hire when transacted through agents licensed by the State to act for the companies in soliciting business for them, do have the effect of imputing liability to the company on bonds executed by agents having *apparent* authority to execute and deliver them, even if they are not conventionally or in fact authorized to execute such bonds as they in fact execute under such apparent authority.

Under a statute of the kind just referred to, the status of agency being irrebuttable when the statutory particulars of agency are present, apparent authority is equal to real authority when the agent's limitations are not made known, and liability of the company on particular undertakings executed by the agent under his apparent authority to

execute them, will depend upon the facts and circumstances of the particular case. Pacific Mutual Life Ins. Co. of Cal. v. Barton, 50 Fed. (2nd) 362 (C. C. A. 5th Cir.) ; Champenois & Blank v. Donald Co., 153 Miss. 719, 121 South. Rep. 485.

And where a state license has been applied for by a surety company, naming a particular person as its agent, with no restrictions on the agency stated in the application, a power of attorney restricting the authority of agent is ineffectual against one dealing with the agent without notice or knowledge of the restrictions. Sun Ins. Office, etc. v. Mitchell, 186 Ala. 420, 65 Sou. Rep. 143.

Persons intrusted with blank bonds, undertakings and seals by a surety company, having access to the surety company's official seal and authorized to negotiate and write bonds and undertakings for it, accept and reject risks, attach seals thereto, etc., are properly held to be general agents of the surety company to execute and issue bonds on its behalf. Corklite Co. v. Rell Realty Corp., 249 N. Y. (Court of Appeals) 1, 162 N. E. 565.

And an agent authorized to sign the name of his principal may effectually bind him simply by affixing to the instrument the name of his principal, as if it were his personal act, the particular form of the execution not being material when done in the name of the principal, and by one having authority in fact to execute the instrument. Independence Indemnity Co. v. Grants Pass and Josephine Bank, 29 Fed. (2nd) 83, C. C. A. 9th Circuit.

Accordingly it has been held that, where the body of a bond sets forth that the surety therein is an authorized surety company doing business in a State, and the signature to such bond is that of the surety company's authorized agent *having authority to execute surety bonds of that general class*, although the signature as signed to the bond does not indicate that the agent in signing the bond was

signing it in the particular instance as agent of the surety company, and when such bond *appears* to have been delivered by the agent as the bond of such surety company, whether it was so delivered or not, the company will be estopped from denying the agent's authority to deliver the bond, or that the signature thereto is not such as to bind the company, where a State statute provides that every person who shall so far represent any surety company as to receive or transmit applications for suretyship, or otherwise to procure suretyship to be effected by such company, etc., shall be deemed an agent of the company. Champenois & Blank v. Donald Co., 153 Miss. 719, 1212 Sou Rep. 485.

Likewise an agent authorized to solicit and receive applications for insurance, and to countersign and issue policies intrusted to him for that purpose, is regarded *quoad hoc* as the general agent of the company, and while his powers could be limited, and such limitations would be binding as between the company and himself, and as to all persons having notice thereof, his authority, as to third persons without notice, or knowledge of facts to put them upon inquiry which would lead to notice, is to be determined by the nature of the business usually done by the agent, and is *prima facie* co-extensive with its requirements. Sun Ins. Office, etc., v. Mitchell, 186 Ala. 420, 65 Sou. Rep. 143.

The tendency of Florida decisions has been to regard surety companies, insofar as they transact their ordinary business of becoming sureties for hire under the laws of this state, as being in a like situation to insurance companies, and as being governed by the same legal principles in so far as the conduct of their affairs is carried on.

Thus it was held in National Surety Company vs. Williams, Receiver, 74 Fla. 446, 77 Sou. Rep. 212, that an indemnity bond, executed by a surety company in the course of its business of suretyship for hire, was in effect a con-

tract to which the rules governing ordinary contracts of insurance should be applied, it appearing in that case that the bond in question had been given to indemnify the bank against losses by its cashier through breach of duty. Many authorities were cited in the opinion to support that view, and the bond in that case was construed in like manner as an insurance contract is construed, although it appeared that the particular instrument sued on was denominated a *bond* by all the parties to it, was executed in the form of a *bond* was regarded by all the parties as a contract of suretyship and was sued on in the declaration as such. Other authorities have regarded the proposition in the same light. See Spencer on Suretyship, sec. 30; Anderson vs. National Surety Co., 196 Penna. St. Rep. 288. The oft stated maxim that "sureties are favored in law" has no application to the business of suretyship for hire. People ex rel. Kasson vs. Rose, 174 Ill. 310, 51 N. E. 246.

No sound reasoning has been suggested as to why the business of suretyship as carried on by surety companies under state regulation, should not be regarded by the Courts as analogous to the insurance business conducted by insurance companies under similar circumstances, and we are therefore impelled to the conclusion that our statute relating to agents of surety companies, and defining who shall be deemed and held to be agents of such companies, should receive the same construction that has been put upon Section 6207 C. G. L., 4256 R. G. S., supra.

We are therefore of the opinion that under section 6307 C. G. L. 4345, R. G. S., every person who shall so far represent any surety company in this state as to receive or transmit applications for suretyship, or to receive for delivery bonds founded on application forwarded from this state, or otherwise to procure suretyship to be effected by such company upon the bonds of persons or corporation in this state, must be deemed and held to be an agent of

such surety company as a matter of law, and that such surety company will not be heard to assert that the *status* of agency does not exist in any case falling within the purview of the statute.

But we are further of the opinion that while the public have a right to rely upon the statutory agent's apparent authority, arising from the fact of the agency itself imputed to him by the statute, to do any act in the course of his agency which he undertakes to do of a character usually performed through agents, and that persons dealing with such statutory agent are not bound to inquire as to his special powers to act in a particular transaction wherein he undertakes to act for the company, unless the circumstances are such as to put them upon inquiry as to a limitation on the agent's power to act in the special instance, that nevertheless, when the circumstances *are* sufficient to suggest such an inquiry as to a limitation on the agent's authority, notice of such limitation, if it exists, will be imputed and the party held bound by the actual facts he might have discovered had he given heed to the circumstances which put him upon inquiry. American Fire Ins. Co. vs. King Lmbr. & Mfg. Co. 74 Fla. 130, 77 Sou. Rep. 168, 250 U. S. 2, 63 L. Ed. 810; Mutual Life Ins. Co. vs. Hilton-Green, 202 Fed. 113, 211 Fed. 31, 241 U. S. 613, 60 L. Ed. 1202; Pac. Mutual Life Ins. Co. of Calif. vs. Barton, 50 Fed. (2nd) 362 (C. C. A. 5th Circuit); Southern States Fire Ins. Co. vs. Vann, 69 Fla. 549, 68 Sou. Rep. 647 L. R. A. 1916B 1189; Aetna Ins. Co. vs. Holmes, 59 Fla. 116, 52 Sou. Rep. 801.

In the case now before the Court, the Circuit Judge found from the evidence that the agent of the National Surety Company had no authority to execute and deliver the bond sued on. There is nothing in the record which shows that the Court erred in reaching this conclusion. The bond that the agent signed was for the penal sum of

$100,000.00 and was of a special and peculiar form framed by the attorney for the obligees, and not by the surety company or its agent. Neither the agency agreement nor the two powers of attorney which Raie had, gave him any power to incur an obligation of this kind or in this amount, so actual authority on his part to bind the National Surety Company was wholly lacking, and the Court properly so held.

But apparent authority is equal to real authority in cases of this kind when limitations on the agent's authority are unknown (Pac. Mutual Life Ins. Co. vs. Baryon, supra) and so it is argued by counsel for plaintiffs in error that since Raie was admittedly authorized to, and did, solicit the writing of bonds for the National Surety Company in Broward, Palm Beach and Dade Counties, received applications for bonds, collected premiums, wrote bonds, and delivered bonds, the statutes of the State of Florida impose on the National Surety Company responsibility for all the acts reasonably done by Raie on its behalf in the prosecution of its business, even though he had no express authority to write the particular bond in question. Corklite Co. Inc. vs. Rell Realty Corporation, 249 N. Y. (Ct. Appeals) 1, 162 N. E. 565, Champenois et al., vs. Donald Co. 121 Sou. Rep. 485, supra; Sun Ins. Office, etc., vs. Mitchell, 65 Sou. Rep. 143 Supra; Zell vs. Herman Farmers Mut. Ins. Co. 75 Wis. 521, 44 N. W. 828; Am. Fire Ins. Co. vs. King, etc. Co. 74 Fla. 130, supra. But as we have heretofore pointed out, constructive agency of this kind is subject to being defeated by circumstances brought to the attention of the party dealing with such an agent, sufficient to put him upon inquiry that the agent had no authority to write the kind of bond being applied for.

Whether or not the agent Raie had apparent authority to execute the bond in question by reason of his general agency, and the circumstances surrounding the manner in

which he carried on his business of representing the surety company, so as to bind that company in the interest of an innocent third party, presents a mixed question of law and fact. Watkins vs. Sims, 81 Fla. 730, 88 Sou. Rep. 764. And had a jury not been waived, such question would ordinarily have been submitted to the jury under appropriate instructions, so that they might determine from the evidence whether an agency did in fact exist for the purpose of executing the particular bond. Standard Oil Co. vs. Nickerson, 138 Sou. Rep. 55, opinion filed Nov. 24, 1931, at the present term.

The Circuit Judge, sitting as a trier of the facts, specifically found that the circumstances surrounding the negotiations for the bond sued on in this case, as well as the circumstances surrounding its execution, were such as in law and fact put the plaintiffs, and those acting for the plaintiffs, upon inquiry as to the nature and extent of the agent's authority which did not warrant his execution of the particular kind of bond applied for, and that therefore no agency for its execution on behalf of the National Surety Company in this instance could be justly found.

This finding has substantial support in the evidence, and therefore an appellate court is not warranted in reversing the judgment and awarding a new trial on the ground that the evidence does not support the verdict, or that the verdict is against the weight of the evidence. Palatka Abstract & Title Co. vs. Haskell, 100 Fla. 1504, 131 Sou. Rep. 394 and cases cited. Standard Oil Co. vs. Nickerson, supra, decided at the present term.

In the consideration of this case the Court has had the benefit of able oral arguments and exhaustive briefs which have given us the benefit of all available authorities touching or controlling the points in issue, but in none of them have we found anything which stands contrary to the con-

clusion we have reached here that the verdict ought not to be disturbed.

We have also considered whether or not there was a ratification, under the principles on that subject most recently stated by Mr. Justice Terrell in Meyer v. Nator Holding Co., 102 Fla. 689, 136 Sou. Rep. 636, where it was said that one for whom another acts as agent, even if unauthorized, cannot accept and retain any part of the benefits of the transaction, without also incurring the liability incident to the alleged agent's acts in the transaction.

But ratification cannot be implied from the fact that the premium was paid to the agent Raie, because the evidence shows that the company did not know of it at the time and that it was never remitted to nor accepted by the surety company. Neither did this premium paid, nor any part of it, ever reach that company's treasury, and obligee's payment to Raie with imputed notice at the time that Raie had no authority to execute the bond for which the premium was paid, was equally as ineffective to bind the company through this payment as was Raie's unauthorized execution of the bond, because the lack of authority to execute the bond precluded the existence of authority to accept on behalf of the company a premium for doing something which the surety company expressly disavowed.

The retention of the indemnity agreements executed by the applicants for the bond is equally insufficient to show ratification of this particular bond. These indemnity agreements appear to be so framed as to constitute a general continuing contract of indemnity not only for this one bond, but for any and all bonds which may be applied for by the same parties *in futuro*.

Ratification because of a claim under these agreements was urged against the indemnors as to this particular bond, cannot be implied because there is nothing to show that the surety company was not entitled to *bona fide* assert

reliance on these indemnity agreements in seeking indemnity for costs and expenses incurred by the company is seeking the cancellation of the bonds already executed which would in equity be subject to cancellation for any just or equitable cause, whether such a claim would be upheld or not. The indemnity provided for might have covered damages arising out of *applications* for bonds which were never issued at all, and if such was the surety company's *bona fide* claim, it cannot be said that the mere assertion of rights claimed under a general *continuing* indemnity agreement of this character would ratify the bond where the damages claimed arose from the *application,* not the bond.

Actual or conventional authority on the part of the agent to execute the bond sued on in this case was undoubtedly lacking. So whatever right of recovery plaintiffs in error acquired against the surety company was by reason of the execution of the bond delivered to them under circumstances showing apparent authority which would amount to real authority, coupled with the absence of notice on the part of the obligees as to any limitation on the powers of the agent to execute it.

Under circumstances such as appear here the question of agency was a question primarily of fact where the evidence was conflicting, as it was here, and that question was determined adversely to the plaintiffs in error by the verdict of the Circuit Judge.

This is not a case where authority to execute and deliver the bond existed as was the case in Champenois & Blank v. Donald Co., from Mississippi, *supra,* where there was a question raised as to its exercise in fact, which the statute estopped the company to deny. Neither is it a case where the agent was vested with authority to *frame the terms of bonds to be issued* and to sign the bond so framed and attach the seal of the company to it, and receive the premium

therefor, as in Corklite Co. vs. Rell Realty Co., from New York, *supra,* especially when the amount of the bond involved here is taken into consideration in connection with a power to execute bonds up to $50,000.00 only in any case, except with special permission from the company.

So without in anywise disapproving the doctrine of those cases on which plaintiffs in error most strongly rely, we find them to be inapplicable to demonstrate error in the finding of the Court below, and so holding, we must affirm the judgment rendered.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND BROWN, J., concur in the opinion and judgment.

ELLIS, J., dissents.

---

### ON REHEARING.

DAVIS, J.—On December 15, 1931, at the June Term, 1931, of this Court, we affirmed the judgment in this case. Rehearing has been granted and the cause re-argued before the Court en banc.

By the petition for rehearing filed, counsel for plaintiffs in error suggest that in disposing of the case as we did on its original consideration that the Court erroneously construed Section 6307 C. G. L., 4345 R. G. S., contrary to its legal intent, in violation of settled principles for interpreting statutes, and without giving due consideration to the public interest intended to be protected by that enactment.

By the petition for rehearing it is asserted that this Court has "whittled down to a mere rule of evidence" what plaintiffs in error assert is "an important statutory liability;" that we have substituted "a rebuttable presumption" for the equivalent of "actual authority created by

the statute;'' that ''in place of a rule of substantive law'' we have set up ''a rule of procedural law.''

The argument thereupon made is that because the statute provides that a person doing for a surety company any of the described statutory acts shall be ''deemed'' as acting as ''agent for said company,'' the surety company must be held statutorily liable through the mere act of Raie, its agent, in actually signing and delivering the bond, whether actually authorized thereunto or not, and notwithstanding any and all known limitations on his agency brought to the knowledge of the obligee.

But the statute in terms is not so broad and inclusive as plaintiffs in error's petition for rehearing suggests.

Such a statute as this does not undertake to conclusively fix the *scope and extent* of the authority of those who become statutory agents under its terms, as between the company and third person. The United States Supreme Court so indicated in Mutual Life Ins. Co. vs. Hilton-Green, 241 U. S. 613, 60 L. Ed. 1202, 36 Sup. Ct. 676. And what the United States Supreme Court said in the last cited case cannot be disregarded on the ground that it is mere ''dictum'' as plaintiffs in error contend.

A ruling in a case fully considered and decided by an appellate court is not dictum merely because it was not necessary, on account of one conclusion reached upon one question, to consider another question the decision of which would have controlled the judgment.

Two or more questions properly arising in a case under the pleadings and proof may be determined, even though either one would dispose of the entire case upon its merits, and neither holding is a *dictum,* so long as it is properly raised, considered, and determined. Galloway v. Darby, 105 Ark. 558, 151 S. W. 1014, 44 L. R. A. (N. S.) 782; King v. Pauly, 159 Cal. 549, 115 Pac. 210, Ann. Cas. 1912-C

1244; McFarland v. Bush, 94 Tenn. 538, 29 S. W. 899, 45 A. S. R. 760, 27 L. R. A. 662.

The recognition of judicial declarations as being "obiter dicta" in special instances is a part of the doctrine of "stare decisis." The doctrine of "stare decisis" would not in any event be applicable to the authorities relied on in this case, because of the fact that we are not bound by the rulings of Federal Courts, even the Supreme Court of the United States, in construing the language of our own statutes.

But, at the same time, State Courts of last resort must of necessity recognize that in the domain of insurance contracts and surety bond agreements, decisions of the Supreme Court of the United States construing state statutes, especially our own, are highly persuasive if not controlling. So many controversies arising in connection with insurance and the business of suretyship for hire have been litigated in the Federal courts, that the very best reasoned and most authoritative cases on these subjects are most often to be found in the reported decisions of the Supreme Court of the United States, and the other Federal Appellate Courts.

Section 6307 C. G. L., 4345 R. G. S., does not require us, as petitioners insist, to "deem," "consider" and "regard" Raie in the transaction involved in this case, as the agent of the surety company in the execution and delivery of the bond in suit. The statute in terms does not go that far. It merely provides that every person who shall so far represent any surety company as to do certain specified acts, shall be "deemed to be acting as agent for said company,"—not that he shall be "deemed to be acting as agent for said company to do any and every act he may undertake to do in his assumed character as such" regardless of other principles of the general law of agency which may be applicable. This is the universal rule even in cases where there is an actual, and not an imputed, agency shown and

relied on to fix liability under the maxim "*qui facit per alium, qui facit per se.*"

We agree with the statement contained in plaintiffs in error's petition for a rehearing that what the statute contemplates is that, when a foreign surety company authorizes an agent to deliver bonds for it, or to receive applications for bonds to be executed by it, and such agent receives an application for a bond to be executed by the company, and thereafter delivers a bond apparently executed by the company, one who accepts the bond *in good faith* is protected against a subsequent claim that the agent who executed it in behalf of the company, was not in fact technically and formally authorized to execute it.

But as we have pointed out, in the opinion heretofore filed, this statement of the law is limited in its application to those cases only, where the fact that the agent was not technically and formally authorized to act, is not affirmatively shown to have been previously made known to the party who deals with him in the contrary belief that he is in fact technically and formally qualified to act, in the particulars in which he does act.

We have further held, and still hold now, that parties dealing with a statutory agent, are not bound to inquire as to limitations on his authority to do the things he purports to do with authority. But we have not gone so far as to hold that the effect of our statute is to deprive the surety company of the benefit of establishing by evidence *known* limitations placed by it on its agent's authority, which persons dealing with such agent have ignored or undertaken to deliberately disregard, at their peril.

The relationship, or status, of agency is not only *prima facie,* but conclusively, fixed by the statute. But the *scope and extent* of the authority of such agents as between the company and third persons is not so conclusively fixed by the statute itself as to fasten irrebuttable liability on the

company for any bond or agreement the agent may sign, from the mere fact that he does sign it. Where there are known limitations which the opposite party knows, or should know, will leave the attempted acts of a statutory agent of an insurance or surety company wholly unauthorized in a particular instance, such known limitation on the agent's authority must be recognized in judicial proceedings.

We are unable to read into the statute more than its language imports. The precise language is, that a person acting for the surety company in the statutory particulars, "shall be deemed to be acting *as agent* for said company." This is not the equivalent of saying that he shall be deemed to be acting as agent for the company *in any particular transaction before the court.* Agency may exist in many cases, but exist without powers to the scope and extent claimed. This is true where statutory agency is relied on, as well as where real agency is shown. The outstanding purpose of our statute was to fortify the state's ability to regulate the transaction of business by surety companies in this state. It has a particular bearing on matters of taxation as applied to surety companies. For this reason the statute fixes in law the status of agency *vel non*, but does not go so far as to fix in every case the scope and extent of the statutory agent's powers in particular matters, involving transactions between the company and third persons. Such is the way the Supreme Court of the United States has construed the statute, and such is our own construction of it, as we have heretofore indicated.

Other matters are presented by the petition and have had our careful consideration.

The Circuit Judge in deciding the case both as to questions of law and fact, obviously made it plain that he intended to find against the plaintiff in error on every conceivable legal hypothesis which was or which could have

been, urged to support a recovery by her. Therefore this is not a case where we should reverse the judgment for a new trial because it was arrived at through the application of a principle of law not legally applicable or controlling in the case, which was the practice suggested as proper in Barry v. Walker, 103 Fla. 533, 137 So. Rep. 711, and cases cited.

The finding of the Circuit Judge was against the plaintiff in error, not only on the question of the right of an agent to execute a bond under seal without being thereunto authorized under seal, but on the merits of the case as presented on every alternative theory. In our previous opinion we attached no importance to the Court's findings against plaintiff on the theory of the agent's lack of a sealed instrument giving him power to execute a bond under seal, because of our view as to the legal effect of the particular statute relating to surety company agency hereinbefore referred to.

But we do attach importance to the trial judge's express finding that the circumstances so put the plaintiff in error on inquiry, as to bring home to her, and her representatives, the agent's want of express or implied authority in the first instance to execute the particular bond sued on.

All concede that Raie when first called on stated that he was not authorized to execute the kind of bond that was later executed. This being so, the obligee should have ascertained whether the needed authority was in fact thereafter given to Raie, for if not given, the bond (in the absence of ratification) does not bind the surety company.

The trial judge sat in this case as a trier of the facts, inasmuch as a jury trial had been expressly waived by the parties, as the record shows. Upon writ of error in jury cases, we have stated the rule to be:

"In passing upon an assignment based upon the ruling of the trial court in denying a motion for a new trial, which questions the sufficiency of the evidence to

sustain the verdict, the guiding principle for an appellate court is not what it may think the jury ought to have done, or what such court may think it would have done had it been sitting as a jury in the case, but whether as reasonable men the jury could have found such verdict from the evidence adduced. If this question can be answered in the affirmative, the action of the trial court upon such motion should not be disturbed.'"[*]

In this case, where the trial judge decided the case against the plaintiff in error on the facts, and the sufficiency of the Circuit Judge's finding of facts is questioned on the ground of an alleged insufficiency of the evidence to sustain the judge's verdict, the guiding principle for an appellate court is not what we think the Circuit Judge sitting as a jury ought to have done, or what we would have done sitting as a jury in the trial of the case, but whether as a reasonable man the trial judge sitting as a trier of the facts, could have found such a verdict as he did find, from the evidence adduced.

The evidence shows that after the bond was applied for meetings of the interested parties were held every day from Monday, September 28th, through Monday, October 5, 1925, except Sunday, and that the delay in closing the transaction was caused by the inability to secure the bond; that Mrs. Parsons and Mr. Wyatt, her attorney, went to the office of one Vanderpool and there discussed with him the question of securing a surety bond, and that Mr. Vanderpool stated that he did not have authority to write such a bond, but that a Mr. Raie did have such authority and that it would have to be through Raie that a bond be procured; that Mrs. Parsons was anxious to return to New York and that she was requested to stay over a day of two longer because Raie, the agent of the National Surety Company, was communicating with his home office in New York, en-

---

*See third headnote in A. C. L. R. R. Co. vs. Levy, 68 Fla. 234, 67 Sou. Rep 47.

deavoring to get authority to issue the bond that Mrs. Parsons demanded; that it was explained explicitly both to Mrs. Parsons and Mr. Wyatt, her attorney, that the agent Raie was at that time without authority to write the bond in question, but was endeavoring to get special authority from New York to execute it.

The evidence further shows that the last conference attended by Wyatt and Mrs. Parsons was held in the office of Mr. Reed, an attorney, at 4:00 o'clock on Saturday afternoon, October 3, 1925. At that conference it was again explained to Mrs. Parsons and Mr. Wyatt that the agent Raie had not yet received authority to execute the bond, but was expecting it at any moment and had been endeavoring to communicate with the National Surety Company on the long distance telephone in order to be assured of his power to execute the bond. The transaction was closed and the bond executed October 5, 1925. The delay in closing the transaction was admittedly due to the act of all the parties in waiting for Raie to obtain authority to executed the bond, and indeed this seems to be an undisputed fact in the case.

The bond itself was not a printed stock form of bond devised by the Surety Company and turned over to Raie as part of the paraphernalia of his agency. On the contrary, it was a bond specially drawn up by the attorneys representing Mrs. Parsons. It was not an ordinary kind of bond, but was a bond of the most unusual character and conditions. As prepared, it was drawn by Mrs. Parson's attorney to be signed by an attorney in fact for the National Surety Company. When executed it was signed by Raie as attorney in fact, but not accompanied by any proof of a power of attorney authorizing him to execute it.

Raie testified that just before the bond was executed by him that he was called to Vanderpool & Company's office where he was informed that it was absolutely essential, in

order to have the sale of real estate go through, that the bond be signed forthwith; that he thereupon left word at his office in Fort Lauderdale that if he should receive a wire from the National Surety Company during the day that it should be sent to him in care of Vanderpool & Company's office in Miami; that afterwards he went to Vanderpool & Company's office in Miami and inquired if there was a telegram for him there and was told that there was not; that afterwards he met Vanderpool coming down from his office and that Mr. Vanderpool informed him that if they were going to secure the business at all the bond had to be signed that day; that Vanderpool had a twenty per cent. commission involved in the signing of the bond and had done everything he could to try to hold the different parties concerned in the real estate deal until authority could be procured to execute for them the bond which Mrs. Parsons demanded; that at Vanderpool's insistence he said that he would go ahead and execute the bond, and went on upstairs and did execute it without ever having heard from the home office of the National Surety Company giving him authority so to do.

Plaintiff, to rebut Raie's testimony, attempted to prove by the witness Vanderpool that just before the bond was signed and delivered, that agent Raie, purporting to represent the surety company, showed him a telegram from the surety company which gave Raie authority to use his own discretion and go ahead and issue the bond, and that after the production of such telegram that Raie then and there laid the bond on witness's desk, signed it, put the company's seal on it and that it was then taken over to be delivered to the representatives of Mrs. Parsons.

Plaintiff in error contends that Raie's conduct in executing the bond after several days delay, supposedly due to his awaiting approval of the home office of the National Surety Company of New York, amounted to a false repre-

sentation that he had secured approval of his company when in fact he did sign and deliver the bond.

But whether there was such conduct as amounted to a false representation, and if so, whether or not obligee relied upon the same, involved the determination by the Circuit Judge of a disputed question of fact which would have necessarily been submitted to a jury to determine had a jury been present.* This issue of fact the Circuit Judge decided adversely to plaintiff in error, and there is substantial legal evidence to support his findings.

The surety company by its evidence sharply contradicted the testimony of the witness Vanderpool concerning the alleged telegram authorizing the bond to be signed by Raie. The Circuit Judge evidently believed that no such telegram was ever sent or purported to have been exhibited as Vanderpool testified to. It is plain from the evidence that if Vanderpool ever informed the representatives of Mrs. Parsons that such a telegram had been shown to him, which he would likely have done at the time, that no one representing Mrs. Parsons demanded the right to inspect the alleged telegram nor made any inquiry to confirm its existence. On the contrary, the inference is strong that Mrs. Parsons' representatives were perfectly satisfied with being furnished a bond signed with the signature of Raie purporting to act as agent of the National Surety Company without any further evidence of his authority to sign it.

The specific finding of the Circuit Judge is that the circumstances surrounding the negotiations for the bond, as well as those surrounding its execution and delivery, were such as put plaintiffs and those acting for plaintiffs, upon inquiry as to the nature and extent of the agent's

---

*For the rule to this effect see 21 R C. L. 820, which is cited with approval by this Court in Watkins vs. Sims, 81 Fla. 730 (734); 88 Sou. Rep. 764. The burden of proof is on the plaintiff. See Miller vs. Chase, 88 Fla. 500, 102 Sou. Rep. 553.

authority, which inquiry they failed to pursue, else they would have found that the agent's authority in the particular instance did not exist.

Under the circumstances disclosed by the evidence, we cannot say that error in the findings of fact by the Circuit Judge has been shown to such an extent as to authorize us to conclude the verdict of the Circuit Judge is wrong and that it should have been rendered for the plaintiffs instead of the defendant surety company. The court found against plaintiffs in error on every premise. The findings of fact by the trial Judge we have heretofore affirmed as having been arrived at by him by the application of properly applicable and controlling principles of law which led to the court's decision in favor of the defendant surety company on the merits of the case as shown by the evidence.

A most careful reconsideration of the case in all its aspects, and with the aid of the able briefs which have been furnished us by counsel for the plaintiffs in error, has failed to convince us that our previous affirmance of the judgment was wrong, and it must therefore be adhered to on this rehearing.

Reaffirmed on rehearing.

BUFORD, C.J. AND WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., concur.