AMERICAN FIRE INSURANCE COMPANY *v.* KING LUMBER & MANUFACTURING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 308.   Argued April 22, 1919.—Decided May 19, 1919.

A fire insurance company transacting business in a State other than that of its incorporation is bound, in respect of such business, by the laws of the State where the business is transacted. P. 9.

A Pennsylvania fire insurance corporation, through a series of years issued a succession of policies on property in Florida, the business being done through local brokers who applied for the insurance, received and transmitted the premiums, drew their commissions from the company and were consulted by it as to the subject-matter insured and the other companies carrying insurance thereon.   The policies, executed in Pennsylvania and sent to the brokers by mail. each contained a warranty for concurrent insurance throughout its term in another specified company, but, with the knowledge

of the brokers; a different company was substituted before the loss occurred. A law of Florida in existence throughout the transactions made any person who solicits insurance or procures applications therefor the agent of the insurer, anything in the application or policy to the contrary notwithstanding, and made one who receives or receipts for money from the insured to be transmitted to the insurer the agent of the latter "to all intents and purposes." *Held,* that, as applied to the case, so as to charge the company with the brokers' knowledge and effect a waiver of the warranty, the Florida law did not deny full faith and credit to the laws of Pennsylvania, or violate the privileges and immunities, due process, or equal protection clauses of the Fourteenth Amendment. *Id. New York Life Insurance Co.* v. *Head,* 234 U. S. 149, and *Mutual Life Insurance Co.* v. *Hilton-Green,* 241 U. S. 613, distinguished.

In the interest of justice the court may decide the merits without passing on a motion to dismiss-that depends on a disputed proposition involving the merits. P. 14.

74 Florida, 130, affirmed.

THE case is stated in the opinion.

*Mr. Gustavus Remak, Jr.,* with whom *Mr. James F. Glen* was on the briefs, for plaintiff in error, made the following points:

No question as to the power to annex conditions to the right of a foreign corporation to do business in Florida is involved, because the law attacked applies alike to individuals, firms, and corporations, domestic and foreign.

The Florida court refused to accept the construction placed upon the statute by this court in *Mutual Life Insurance Co.* v. *Hilton-Green,* 241 U. S. 613, and the constitutionality of the act must be determined in view of the construction put upon it by the Florida court.

The construction of the statute by the Florida court conclusively makes the agent of an insured, who effects insurance for him, the agent of the insurer, with unlimited authority to bind the insurer, and forbids inquiry into the facts, in violation of § 1 of the Fourteenth Amendment.

Where matter of fact necessarily inheres in a cause of action, concerning which there is dispute, no statute can conclusively settle this matter of fact in favor of one class of litigants against another class.

It is one thing to attribute effect to the convention of the parties entered into under the admonition of the law, and another thing to give to circumstances, may be accidental, conclusive presumption, as proof establishing a result against property and liberty. *Orient Insurance Co.* v. *Daggs,* 172 U. S. 566.

No Florida statute could operate on contracts effected in Pennsylvania by a Pennsylvania insurance company not doing business in Florida. Particularly could it not operate *in invitum* to make strangers agents of a foreign insurance company.

The policies were declared upon as Pennsylvania contracts, and were Pennsylvania contracts.

In case of doubt, parties are presumed to contract with reference to a law that will sustain their contracts in their entirety.

The provisions of the policies conclude the whole controversy if they are given effect.

Isolated transactions do not constitute doing business by a foreign corporation.

The Florida statute never was intended to raise special agents with limited authority into general agents.

The only cases tending to sustain the decision of the Florida court are *Stanhilber* v. *Insurance Co.,* 76 Wisconsin, 285, and *Brewing Co.* v. *Insurance Co.,* 95 Iowa, 31, decided in 1890 and 1895, respectively, and necessarily overruled by *Allgeyer* v. *Louisiana,* 165 U. S. 578, decided in 1897.

All the other cases cited by the Florida court belong to two classes: (1) Cases denying recovery on assessment policies, in favor of the insurer, on the ground they violated the policy of the law in the States where they were

sought to be enforced, which obviously are not authorities to support recovery by the insured, and (2) cases holding that a foreign insurance company doing business in another State through authorized agents submits itself to the laws of that State, which obviously have no application.

The request for information as to the property insured and the insurance thereon was a necessary incident in effecting the contract, which could not make the agents of the insured agents of the insurer.

The allowance of the usual broker's commission was immaterial.

The ultimate analysis is that a Florida statute could not be applied to the contracts of a Pennsylvania company that never left its domicile in Pennsylvania so as to subject itself to the laws of Florida.

*Mr. Benj. Micou,* with whom *Mr. John H. Treadwell* and *Mr. E. D. Treadwell* were on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action on two fire insurance policies issued by plaintiff in error, to which we shall refer as the insurance company, to defendant in error, to which we shall refer as the lumber company. Each policy was for the sum of $2,500. There was total insurance on the property described in the policies of $45,750, and it was provided that the insurance company should only be liable for its pro rata share of any loss caused by fire under the provisions of the policies. The loss to the lumber company was $21,028.17, and the insurance company's pro rata share was on each policy $1,149.08.

There is not much dispute about the facts. There

is considerable dispute about the inferences from them, and facts and inferences were presented in a maze of pleadings which terminated in a demurrer to a rejoinder by the insurance company to replications of the lumber company to the pleas of the insurance company to the declaration in the case.

The court, in passing upon the demurrer, being of the view that § 2765 of the General Statutes of Florida (*infra*) was applicable, rendered judgment accordingly for the lumber company on the policies for the sum of $2,298.16, with interest at 8% from February 16, 1913, and the sum of $300 as a reasonable attorney's fee. The Supreme Court of the State affirmed the judgment.

The controversy is not especially complicated of itself, but it is made somewhat so by the manner of its presentation. The form and issue of the policies and the fact of fire and loss by it are not in dispute. The controversy centers in the relation of a particular firm of insurance brokers, residing at Tampa, Florida, to the insurance company and the lumber company, whether they were the agents of the former or of the latter under § 2765 of the statutes of Florida and whether they could dispense with the requirement of a clause in the policies called the warranty clause. That clause, therefore, and § 2765 (and, we may say, also § 2777, the Supreme Court of the State taking it into account) become essential elements of decision, and we exhibit them immediately.

Section 2765 is as follows:

"Any person or firm in this State, who receives or receipts for any money on account of or for any contract of insurance made by him or them, or for such insurance company, association, firm or individual, aforesaid, or who receives or receipts for money from other persons to be transmitted to any such company, association, firm or individual, aforesaid, for a policy of insurance, or any renewal thereof, although such policy of insurance is not

signed by him or them, as agent or representative of such company, association, firm or individual, or who in any wise, directly or indirectly makes or causes to be made, any contract of insurance for or on account of such insurance company, association, firm or individual, shall be deemed to all intents and purposes an agent or representative of such company, association, firm or individual."

Section 2777 is as follows:

"Any person who solicits insurance and procures applications therefor shall be held to be an agent of the party issuing a policy upon such application, anything in the application or policy to the contrary notwithstanding."

The warranty clause reads: "Warranted same gross rate terms and conditions as and to follow the American Central Ins. Co. of St. Louis, Mo., and that said Company has, throughout the whole time of this policy at least $5,000 on the identical subject matter and risk and in identically the same proportion on each separate part thereof; otherwise, this policy shall be null and void."

The clause was not complied with. The lumber company carried concurrent insurance, but not in the Missouri company. The omission and substitution, it is alleged, were at the suggestion of Lowry and Prince, of Tampa, Florida, who were the agents of the insurance company and who, as such agents, caused and procured the lumber company to renew its policies from time to time, and finally the company, at the suggestion of Lowry and Prince, substituted other policies for policies in the Missouri company, with the knowledge of the insurance company, such other companies being equal in credit and responsibility to the Missouri company.

To these assertions the insurance company opposed contentions of law and fact, not, however, by any one pleading. The following are the facts it alleged, stated

narratively: The insurance company is a Pennsylvania corporation authorized to write and issue policies on property outside of Pennsylvania. Lowry and Prince, as brokers of the lumber company, applied for it (the lumber company) to the insurance company for insurance upon the lumber company's property. Policies were issued, and upon subsequent application policies were continued to be issued, including those in suit. They were executed in Philadelphia and delivered to Lowry and Prince by mail. They each contained a warranty such as has been set out as to the existence of concurrent insurance with an approved and designated company doing business in Florida, the names of the companies being changed from time to time at Lowry and Prince's request, and finally the name of the American Central Insurance Company of St. Louis, Missouri, being inserted, the ground of the request being that they were the agents of that company and would know of any cancellations by it. Lowry and Prince were not agents of the insurance company nor authorized "to represent it in any manner, shape or form," but as agents of the lumber company transmitted to the insurance company at its main office in Philadelphia the original and subsequent applications for policies, and as such agents received by mail the policies and transmitted the amount of premiums to the company less the usual brokers' commissions.

Besides statement of the above facts the rejoinder contained the following denials: That by issuing the policies to the lumber company the insurance company was engaged in the transaction of business in the State of Florida; that the lumber company paid Lowry and Prince, for the insurance company, any premiums on the policies; that Lowry and Prince were its agents; that prior to the furnishing of the proofs of loss by the lumber company the insurance company had any notice or

knowledge that the Missouri company had canceled its policies on the property insured and did not carry $5,000 on the identical subject-matter and risk; or that it advised or consulted with Lowry and Prince as to the advisability of the risk or otherwise, except to the extent that it did request information from them as to the subject-matter insured and as to the companies carrying insurance thereon.

It will be observed that the rejoinder raised no question under the Constitution of the United States. That was done by a demurrer to the replications of the lumber company and was expressed, in effect, as follows: "The legal predicate for the conclusion that Lowry and Prince were the agents of the defendant [the insurance company] rests upon § 2765 of the General Statutes of Florida" and, further, if the section be so construed it violates (a) the full faith and credit clause of the Constitution of the United States in that the State of Florida would thereby deny full faith and credit to the laws of the State of Pennsylvania, and so construed, it violates (b) the privilege and immunities clause, the due process clause and the equal protection clause of the Fourteenth Amendment.

Some other matters were set forth in the demurrer which we think are not material to mention. They only express what is expressed in other places, that Lowry and Prince were not the agents of the insurance company but were and must be considered as agents of the lumber company; and alleged that the policies were Pennsylvania contracts, complied with the Pennsylvania law, and that to construe them as the lumber company contends they should be construed would be to deny that law full faith and credit.

The ultimate question, then, is the relation in which the insurance brokers stood to the respective companies. The case would seem, therefore, not to be of broad compass nor to justify the elaborateness of argument that

has been addressed to it. We certainly do not consider a review of the many cases cited by the insurance company necessary to be made.

The Florida law first demands attention. It is explicit in its declaration. It was in existence when the policies were executed, and when the policies of which they are the successors were executed. There was, therefore, a course of conduct and transactions through a succession of years—not a single instance or an isolated one, as the insurance company contends, but a number of instances and all in relation. Nor does the case present an attempt of the Florida law to intrude itself into the State of Pennsylvania and control transactions there; it presents simply a Pennsylvania corporation having the permission of that State to underwrite policies on property outside of the State and the exercise of the right in Florida. And necessarily it had to be exercised in accordance with the laws of Florida. There was no law of Pennsylvania to the contrary—no law of Pennsylvania would have power to the contrary. There is no foundation, therefore, for the contention that full faith was not given to a law of Pennsylvania, nor of a denial of a right to a citizen [1] of Pennsylvania, nor of a denial of due process or the equal protection of the law.

The law of Florida, it is true, puts an element into the transactions of the parties to insurance and makes the person who solicits insurance and procures applications the agent of the party issuing the policy, and this against any provision in the policy to the contrary. And, even farther, the law makes the person who receives or receipts for money from the insured to be transmitted to the insurer the agent of the latter.

---

[1] A corporation is not a citizen within the meaning of the provision of the Constitution which secures the privileges and immunities of citizens against state legislation. *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557–561.

There is nothing unreasonable in the conditions; they regulate the transactions, do not prevent them, or even embarrass them by ambiguity. A company is informed what it may incur by underwriting insurance in the State, and it cannot assert surprise or ignorance—certainly the insurance company in the present case cannot do so. It had knowledge or must be charged with knowledge of the law. It dealt through Lowry and Prince during a succession of years, permitted them to receive and receipt for premiums and transmit them to it, and consulted with them about the subject-matter and with what companies the risk was divided. It accepted the benefit of their action while premiums were being received and new policies were being issued. It is rather late to reject the consequence. Indeed, the attempt at rejection suggests the possibility of the occurrence of examples of like kind and may indicate the reason for the enactment of the law—suggest that its purpose was to preclude confusion and dispute as to the relation of the broker to the parties respectively, and to preclude an underwriter, after using the agency, from denying responsibility.

These deductions are not contravened by the cases cited by the insurance company. Its basic proposition is that a State has no jurisdiction of persons or property beyond its borders or of contracts executed beyond its borders, and it invokes the proposition by the assertion that the policies were Pennsylvania contracts and being such were immune from regulation by Florida, and *New York Life Insurance Co.* v. *Head*, 234 U. S. 149, is adduced as typical. In that case the principle was expressed that the laws of a State could not be extended beyond its confines, and it was concretely applied in the case to deny to the State of Missouri the right to extend its authority into the State of New York and there forbid a citizen of New Mexico and a citizen of New York from

making a loan agreement in New York simply because it modified a contract originally made in Missouri. The difference between that case and this is manifest, and the other cases relied on are not nearer in point. The Florida statute does not attempt to invade Pennsylvania and exercise control there. It stays strictly at home in this record and regulates the insurance company when it comes to the State to do business with the citizens of the State and their property.

It is true the insurance company contends that its transactions were all isolated ones, not such as to constitute doing business in the State, and, besides, that it had no permission to be in the State and could not be presumed to be there against its laws; and, besides, again, its policies declared that they were to be effective in Pennsylvania. Cases are cited which are assumed to support these contentions. A review of them is unnecessary. The contentions confuse a simple situation and would withdraw from the jurisdiction of Florida transactions there and give them another theatre and another control. In other words, would displace the law by the very things it precludes from such operation.

The challenging response of the insurance company is that to give the law that effect is to bring it under the condemnation of *Mutual Life Insurance Co.* v. *Hilton-Green*, 241 U. S. 613. That case considered the Florida law, but did not deny its legality nor decide that the State could not make the local broker, if the designated conditions existed, the agent of an underwriter. It only decided that the knowledge of the agent of misrepresentation and fraud by the insured could not be imputed to the underwriter. It was naturally held that such imputation was a perversion of the rule which imputes an agent's knowledge to his principal and its underlying reason "that an innocent third party may properly presume the agent will perform his duty and report all facts which affect

the principal's interest." To so extend the law would be a perversion of it, not a use to it—make it not a regulation but an oppression. The present case is not open to that condemnation. The lumber company was an "innocent third party" and could properly presume that Lowry and Prince would and did perform their duty and report to the insurance company their knowledge of the concurrent insurance that was carried on the property, and that the provision requiring it was equivalently complied with. And there was not dereliction in the agents; the substituted security was not insufficient. If the power that was exercised had no binding effect on the insurance company it would be difficult to imagine what would have under the Florida statute. Nor can we yield to the contention that to so construe it is "to raise special agents with limited authority into general agents."

The insurance company, however, insists that the policies constituted the contracts between it and the lumber company and that they were not subject to subsequent variation, and *Lumber Underwriters* v. *Rife*, 237 U. S. 605, is cited. The case is not apposite. There was an attempt, in that case, to vary the written words of a contract by a concurrent parol agreement; in other words, and to quote those of the case, to establish by "parol proof that at the very moment when the policy was delivered" one of its provisions was waived. It was not decided that there could not be a subsequent waiver of a provision of a policy nor that the convention of the parties could not be made subject to a law of the State.

Finally the insurance company contends that the Florida law, as aided by the decision of the Supreme Court of the State, gives "the agent of the insured unlimited authority to bind the insurer, and forbids inquiry into the facts, in violation of § 1 of the 14th Amendment." Phases of the contention are covered by what we have said, and its main foundation that inquiry into the facts is forbidden

is not tenable. The facts were exhibited in the pleadings and they showed that the conditions for the application of the law existed. They showed insurance effected through the brokers, Lowry and Prince, their communication with the insurance company, their transmission of money to it, the payment of their commission by the company, and the consultation of the company with them as to the "subject matter insured, and the companies carrying insurance thereon," to use the language of the rejoinder.

A motion to dismiss is made on the ground that the federal questions raised were not passed upon by the courts of the State, but that the courts rested their decision on the fact that the contracts were made in Florida rather than in Pennsylvania. That, however, was a disputed proposition and the motion so far involved the merits of the case that we have considered, under such circumstances, justice would be better served by going into the merits. *Beaumont* v. *Prieto*, 249 U. S. 554.

*Judgment affirmed.*