## ALLIANCE INS. CO. OF PHILADELPHIA v. BROWN.

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

No. 5847.

Charles A. Strong, of San Francisco, Cal. (William H. Hunt, of San Francisco, Cal., of counsel), for appellant.

Breed, Burpee & Robinson and Wm. M. Thornton, all of Oakland, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. On February 5, 1928, a building on which appellant carried insurance, known as the Occidental Hotel, in the city of Hayward, Cal., was partially destroyed by fire. To the policy was attached a rider, commonly referred to as a "mortgagee clause," making the loss, if any, payable to the mortgagee as his interest might appear. Appellee, the holder of the first mortgage, brought this action to recover the damage he had sustained from the destruction of his security. Jury trial was duly waived, and, after hearing the evidence, the court, without special findings, entered judgment in his favor for $12,500, with interest and costs.

One of the assignments rests upon the fact that in November, 1927, the hotel had been closed under a court order in an abatement proceeding brought against the owner pursuant to the National Prohibition Act (27 USCA) and was at the time of the fire in charge of a watchman or keeper appointed by the court. In that suit appellee was formally joined as a codefendant with the owner, Louis M. Gilabert, but he was not therein charged with any wrongdoing. The rider referred to expressly provided that the loss or damage, if any, should be payable to Harry Brown, first mortgagee; and, that as to the interest of the mortgagee, the policy should not be invalidated by any act or neglect of the mortgagor or owner or by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than were permitted by the policy. It further provided, however, that the mortgagee should notify the company of "any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee, and unless permitted by this policy, it shall be noted thereon and the mortgagee shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void." And in the body of the policy it was expressly provided that "a change of occupancy of building ing without material increase of hazard" should not affect the validity of the insurance.

The gist of appellant's contention, as we understand it, is that the abatement order operated to effect a "change of occupancy," that this resulted in an "increase of hazard," and that, nothing having been "noted" on the policy, the policy became void. The provision just quoted from the rider is not free from ambiguity. It is uncertain what was intended to be the antecedent of "it" in the phrase "it shall be noted thereon," and it is not clear by what default or defaults it was intended the policy should be rendered void. But a full construction of the clause is not thought to be necessary. In the first place we are not convinced that the abatement proceeding operated to effect "a change of occupancy." The active operation of the hotel business temporarily ceased, but the building was devoted to no other purpose, continued to be furnished as a hotel, and was occupied by the keeper who lived therein. But if we assume, without deciding, that, as contended by appellant, the abatement proceeding effected a "change of occupancy" and that consequently it became the duty of the mortgagee, having full knowledge thereof, to notify the insurer and pay an additional premium if demanded, we are of the opinion that there is ample ground to support the judgment. While in some respects conflicting, the testimony was sufficient to justify a finding of the following facts: Upon being served with summons, Brown, being concerned as to the effect the proceeding might have upon the insurance, conferred with Gilabert, the owner of the property, and at his suggestion they went to the office of one Moitoza, appellant's local agent by whom the insurance was obtained, and the policy was written or issued. He assured them that the company would desire to continue the policy in force, and that they should not worry; that he would see the chief of the city fire department and would take steps to have the court put a keeper in charge, and that everything would be all right. Accordingly, as already stated, the court did, upon the owner's application, put a keeper in charge, and about two weeks later Moitoza informed Brown that he had seen the chief and had notified the company. Moitoza died before the cause was tried, and the owner had gone to Spain, but one Nunes, who had been employed in the former's office for a number of years, testified that after the abatement proceeding was commenced a Mr. Mallon, who was a special agent in the

territory for the appellant and who visited the various agencies from time to time, came to Moitoza's office, where, referring to the proceeding, he advised Moitoza that, unless something was done to have a keeper, the policy would have to be canceled. Moitoza suggested that arrangement would be made for a keeper, and at a later date, after the keeper had been appointed, Mallon again came to the office, and, to an inquiry from Moitoza, Mallon advised him that the company was satisfied; and, upon the suggestion from Moitoza that the consent ought to be in writing, he responded that he would take it up with the company, and that Moitoza would within a few days receive a letter expressing consent. This witness further testified that about a week thereafter such letter was received, that it was read in his presence by Moitoza to Gilabert, and that the letter in substance stated that the company was satisfied and that, a keeper having been put in charge, it would continue the policy. Upon a search the letter could not be found, and there was evidence tending to show that it may have been destroyed, together with other papers, by Moitoza's widow. In short, a proper foundation was laid for the introduction of oral testimony touching its contents, and there was testimony corroborative of that given by Nunes.

Appellant offered some testimony tending to rebut the contention that such a letter was written, but no purpose would be served by analyzing it, for, in the most favorable view to appellant, all that could be said is that upon that question the evidence is conflicting, with a preponderance, as we think, in support of the position that such a letter was written by the company and its contents disclosed to the insured.

True, no notation was made on the policy, but undoubtedly appellant knew that under the abatement proceeding the operation of the hotel had ceased, and that a keeper was in charge of the property. Whether such change in status operated to increase the hazard was for its determination. Being satisfied upon that point, naturally it saw no reason for indorsing the policy. If it was dissatisfied, in all good conscience that was the time for it to speak. The owner and the mortgagee could then have taken steps in some other manner to protect themselves. It could not to their peril lull them into a feeling of security by assuring them that nothing more need be done, retain the premium paid for the full period, and later on, after the loss had occurred, contend that the hazard was in fact increased, and

that therefore the policy became void. That it did consider the policy as continuing in force is made clear in a letter written to appellee by one Evans, appellant's agency superintendent, on February 17, 1928, 12 days after the fire occurred, in which after describing the policy, he said: "You are noted as the Mortgagee on this policy, and, in accordance with the statutory conditions of the policy, we hereby notify you of the Company's desire to cancel this policy. Notice has also been sent to the assured, and we have advised him to procure other insurance as we will deny all liability under the policy after the lapse of time as required by the printed conditions of the policy in reference to notice of cancellation to both assured and mortgagee. The policy may be retained until the loss now in course of adjustment has been settled, and on surrender of the policy we will refund to the assured the unearned premium thereunder."

It is further to be borne in mind that we have not for consideration a case where it is attempted, in derogation of the terms of the policy, to charge the insurer, because of the knowledge by an agent, or his oral agreement, had before or at the time the policy was written. What was said and done here related to the interpretation of the policy and its application to conditions arising long after its execution. See American Fire Ins. Co. v. King Lumber Co., 250 U. S. 2, 13, 39 S. Ct. 431, 63 L. Ed. 810; Mackintosh v. Agricultural Fire Ins. Co., 150 Cal. 440, 89 P. 102, 119 Am. St. Rep. 234; 26 C. J. p. 303; 14 R. C. L. pp. 1155, 1162, 1181, 1182.

Furthermore, not only was the company at the time apparently of the opinion that the hazard was not increased, but, though it endeavored to prove the contrary, the testimony is inconclusive, and a view that the hazard was not augmented has substantial support in the record. The evidence tends to show that the "moral" hazard was increased, but that the "physical" hazard was decreased. Whether as a net result the hazard was increased is, therefore, left in uncertainty. See Esch v. Home Ins. Co., 78 Iowa, 334, 43 N. W. 229, 16 Am. St. Rep. 443, and 26 Corp. Juris 200, § 243. The case is quite different from one where, owing to changed conditions, a building in an isolated place ceases to be profitably useful and is left unoccupied without a keeper. In such a case additional hazards, both moral and physical, are readily suggested. Here the building was temporarily withdrawn from use, in punishment of the owner and not because it was unavailable for profitable use,

and a keeper was put in charge by order of court. It was not in an isolated place, but was within a city where it had the protection of organized police and fire departments. Clearly under such circumstances and the testimony, a finding that upon the whole the hazard was not increased was justified.

As to the amount of the judgment, it is unnecessary to say more than that it is within the range of the estimates of loss made by the several witnesses. It is to be expected that upon such an issue the estimates will vary, and, in the absence of a plain mistake on the part of the trial court, we should not disturb the finding there made.

What we have said upon the assignments specifically discussed of necessity disposes of a specification that the court erred in receiving the testimony of the witness Nunes, and the specifications touching the denial of appellant's motion for a nonsuit and its request for a general finding in its favor.

In the course of the trial, over the objection of appellant and in response to a question asked by the court, it was shown that the city of Hayward had an ordinance prohibiting the repair of a building which had been more than half destroyed by fire. Under the terms of the policy, the ordinance was immaterial and it was error to admit the evidence. But no testimony or estimate on the part of any witness touching the amount of the loss was in any way based upon this consideration. All the estimates were of the cost of repairing the building by using materials of like kind and quality. That being true, and the issues being before the court without a jury, it is to be presumed that the finding was based upon the testimony. The error was without prejudice.

Judgment affirmed.