14813

CAUTHEN v. METROPOLITAN LIFE INSURANCE CO.

(1 S. C. (2d), 147)

*Messrs. Carlisle, Brown & Carlisle* and *W. Clarkson Mc-Dow,* for appellant,

*Messrs. Wm. M. Wilson* and *Finley & Spratt,* for respond-ent,

February 2, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The respondent sued to recover the sum of $2,000.00 and interest, alleged to be due her as beneficiary under an insurance policy issued February 23, 1927, by the appellant on the life of her husband, Minor C. Cauthen, who died April 26, 1936. The policy was written for $2,500.00, but the complaint alleged and the proof established that the insured had borrowed $500.00 on the policy during his life, and had not repaid the same.

The appellant admitted the issuance of the policy sued on, but defended on the ground that the policy had lapsed and become void for non-payment of the quarterly premium of $26.85 which fell due August 23, 1935. There was a verdict and judgment in favor of the respondent. The appellant brings the cause to this Court upon exceptions assigning error to the lower Court in the admission of certain evidence, and in overruling its motions for a nonsuit, directed verdict, and new trial; and complains of instructions given to the jury.

While the action brought was based upon the $2,500.00 policy referred to, it is also necessary to refer to another

policy for $1,100.00, issued by the appellant on the life of Minor C. Cauthen in February, 1927, payable to respondent as beneficiary. This latter policy also lapsed for non-payment of the quarterly premium of $10.01, which fell due on September 15, 1935. At the time this policy lapsed it had a cash surrender value of $500.00 and there was a loan against it of $500.00, previously made to the insured. Upon proof of the death of the insured the company paid to the beneficiary the $1,100.00 policy, with interest, less the loan, and at the same time tendered to her the sum of $20.14, which she refused to accept, and to which reference will hereafter be made.

Upon the trial, the respondent contended that the $2,-500.00 policy either became reinstated or the company had waived forfeiture, and that the policy was in force at the death of the insured. She asserted that the assistant district manager, whose office is at Rock Hill, had led her to believe that both policies had been reinstated, and were in force; that she had acted upon this belief, and that the company was estopped from claiming otherwise.

The appellant contended that both policies had lapsed for non-payment of premiums, but that the insured shortly prior to his death had signed an application for reinstatement of the $1,100.00 policy, had furnished a certificate of health showing his insurability and had paid the amount of overdue premiums necessary for its reinstatement. It is conceded that although this application for reinstatement of the $1,-100.00 policy had not been finally acted upon by the company at the time of the death of the insured, the company paid the balance due thereon to the beneficiary. The appellant further contended that its agent was without power to create any liability on its part as to the $2,500.00 policy, or to bind the company by waiver of the forfeiture in view of the limitations placed on his authority by Clause 8 of the policy.

Mr. C. T. Bush was the appellant's manager and agent at Rock Hill, where the respondent lived, and all premiums

which were paid on these policies were handled through his office from June, 1934, to the date of insured's death in 1936. The facts show that Mr. Bush was not a general agent. His duties were those of a soliciting and collecting agent.

Mrs. Cauthen, the respondent, had the policies in her possession and personally attended to the payment of all premiums paid on the two policies. In the course of the years each of these policies had lapsed, and had been reinstated several times. Having the policies in her charge, the respondent had gone through the process of reinstatement each time with the appellant through its agent. She was familiar with the prescribed and accustomed procedure; the printed application, the evidence of insurability, the payment of overdue premium with interest, and the approval by the company. The evidence discloses no single deviation from this well trodden path.

After the lapse of the $1,100.00 policy for nonpayment of the quarterly premium due on September 15, 1935, and the lapse of the $2,500.00 policy for non-payment of the quarterly premium due on August 23, 1935, she says that she requested Mr. Bush to see if both policies could be again reinstated. That acting upon her request he obtained the necessary information and later told her that both policies could be reinstated for $15.33, which she paid. That shortly after this, he informed her that an additional amount of $4.81 was necessary for reinstatement of the $1,100.00 policy, making a total of $20.14 for both policies. She received a receipt for this latter amount from Mr. Bush, in which it was specifically stated that it was applicable to the $1,100.00 policy. The amount of $15.33 was not paid directly to Mr. Bush, but it was left for him at his office with another agent unacquainted with the matter, who gave her a receipt merely reciting that it was for M. C. Cauthen, the insured, and without referring to either policy.

Mr. Bush testified that he forwarded the two amounts referred to, together with a certificate of health and a signed

application for reinstatement of the $1,100.00 policy, to the District Office at Spartanburg, and that the transaction related solely to the reinstatement of the $1,100.00 policy. The record indisputably shows that it required exactly $20-.14 to reinstate the $1,100.00 policy. But the respondent says that Mr. Bush personally assured her more than once that this amount would reinstate both policies, and that, after receiving it, he told her that both policies were in force. This he categorically denies. No application for the reinstatement of the $2,500.00 was ever signed. The respondent states that the only application given her by Mr. Bush had to do with the $1,100.00 policy, and this she had her husband sign. She relied, she says, upon his positive statement that the $20.14 given to him would reinstate both policies, although she expressed surprise, from her previous experience, that it could be done for so little.

The primary question raised by this appeal is, Did Bush have authority as an agent of the company to waive the forfeiture of the $2,500.00 policy sued on?

With reference to reinstatement, the policy carried this provision: "If this Policy shall lapse in consequence of default in payment of any premium, it may be reinstated at any time, unless the cash surrender value has been paid or the non-participating paid-up insurance period has expired, upon the production of evidence of insurability satisfactory to the company and the payment of all overdue premiums with interest at six per centum per annum to the date of reinstatement. Any loan which existed at date of default, together with interest at the same rate to the date of reinstatement, may be either repaid in cash, or, if not in excess of the cash value at date of reinstatement, continued as an indebtedness for which this policy shall be security."

By Clause 8 of the policy it is provided: "No agent is authorized to waive forfeitures, to alter or amend this policy, to accept premiums in arrears, or to extend the due date of any premium."

Under Sections 7970 and 7971, 1932 Code, any one "who solicits insurance in behalf of any insurance company not organized under or incorporated by the laws of this State, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who * * * gives notice that he will receive or transmit the same, or who shall * * * receive, collect, or transmit any premium of insurance, making or the consummating of any contract of insurance for or with any such company, other than for himself * * *, shall be held to be acting as the agent of the company for which this act is done or the risk is taken."

While these laws determine who shall be deemed an agent of the insurer in these particulars, they do not prohibit insurance companies who necessarily have to transact their business through agents, from limiting or restricting the power of such agents. *Rabb v. New York Life Ins. Co.,* 108 S. C., 137, 93 S. E., 711; *Rowe v. United States Industrial Life Ins. Co.,* 90 S. C., 168, 72 S. E., 1018; *Hyder v. Metropolitan Life Ins. Co.,* 183 S. C., 98, 190 S. E., 239, 243.

In the last cited case, *Hyder v. Metropolitan,* we quoted with approval the following rule from 32 C. J., Page 1064, Sec. 141: "While restrictions or limitations of which insured has no notice are not binding on him, he cannot hold the company bound by the acts, contracts, or representations of an agent, whether general or special, which are beyond the scope of such agent's authority as are known either actually or circumstantially to him."

The same principle is well stated in *Parsons v. Federal Realty Corporation, infra:* "While the public have a right to rely upon the statutory agent's apparent authority, arising from the fact of the agency itself imputed to him by the statute, to do any act in the course of his agency which he undertakes to do of a character usually p e r f o r m e d through agents, and that persons dealing with such statutory agent are not bound to inquire as to his special powers to

act in a particular transaction wherein he undertakes to act for the company, unless the circumstances are such as to put them upon inquiry as to a limitation on the agent's power to act in the special instance, nevertheless, when the circumstances are sufficient to suggest such an inquiry as to a limitation on the agent's authority, notice of such limitation, if it exists, will be imputed; and the party held bound by the actual facts he might have discovered had he given heed to the circumstances which put him upon inquiry. *American Fire Ins. Co. v. King Lmbr. & Mfg. Co.*, 74 Fla., 130, 77 So., 168; Id., 250 U. S., 2, 39 S. Ct., 431, 63 L. Ed., 810; *Mutual Life Ins. Co. v. Hilton-Green* (C. C. A.), [5 Cir.] 202 F., 113; Id. (C. C. A), [5 Cir.] 211 F., 31; Id., 241 U. S., 613, 36 S. Ct., 676, 60 L. Ed., 1202; *Pac. Mutual Ins. Co., of Calif. v. Barton,* 50 F. 2d, 362 (C. C. A., 5th Circuit); *Southern States Fire Ins. Co. v. Vann,* 69 Fla., 549, 68 So., 647, L. R. A., 1916B, 1189; *Aetna Ins. Co. v. Holmes,* 59 Fla., 116, 52 So., 801." *Parsons v. Federal Realty Corp.,* 105 Fla., 105, 143 So., 912, 917, 88 A. L. R., 275.

The question respecting which doubt arises and must continue to exist, after examining the authorities, is whether and when the assured must be deemed to have notice of limitations upon the agent's authority expressed in the policy.

Many Courts, including our own, apply the rule with far greater rigidity where the limitation of the power of an agent relates to events which occur after the issuing of the policy, and on account of which it may be forfeited.

The proof in this case affords no reasonable inference other than that the respondent was fully experienced in the method and procedure followed in the reinstatement of insurance policies. As already shown, the $1,100.00 policy and the $2,500.00 policy, together with the payment of premiums thereon, had been in her exclusive charge for about three years. In every instance of reinstatement prior to the one which has given rise to this lawsuit,

she had obtained her husband's signature to the application for reinstatement, and, in conformity with the policy requirements, had furnished evidence of insurability and had paid all overdue premiums with interest thereon. There is a total absence of evidence tending to prove that the appellant through its agent, Mr. Bush, by any course of conduct, custom or usage, had ever varied or departed from the specific requirements of the policy dealing with reinstatement or payment of premiums. In addition to this, the policy by its terms carried the provision that no agent could waive a forfeiture or alter or amend the provisions of the policy, or accept premiums in arrears, or extend the due date of any premium. There is a total absence of testimony that the company itself ever acquiesced in or ratified the alleged conduct of Mr. Bush, or that it knew anything whatever concerning the alleged effort to reinstate the $2,500.00 policy.

In our opinion, the facts and circumstances in this case were ample to have warned the respondent that the agent, Bush, was acting beyond the scope of his authority, conceding for the sake of the argument that he actually told her—which he denies—that both policies were reinstated, and were in force.

"There is a class of cases, largely of comparatively recent date, wherein the Courts have inclined to a more liberal construction of an insurance agent's powers in favor of the insured than those considered in the preceding section, the substance of these decisions being that restrictions upon an agent's authority set forth in the policy are not conclusive upon the insured as to matters connected with the contract prior to its completion, but, only relate to the exercise of the agent's authority in matters concerning the policy after its delivery and acceptance, the theory in the main being that no presumption can reasonably attach that the insured was cognizant of such provisions, or could anticipate that they would be incorporated into the policy." 2 Couch on Insurance, Section 522b, Page 1500.

It may be conceded that upon this subject the decisions "speak a varied language." But we have followed very consistently the more liberal construction referred to, where the alleged waiver relates to matters connected with the contract prior to the delivery of the policy.

The respondent relies upon two or three cases which appear to give a measure of recognition and approval to the rule which permits an agent to waive policy provisions limiting his authority after the contract has been completed and the policy issued. But upon examination these cases cannot be considered as authority for this position.

In *Harvey v. Philadelphia Life Ins. Co.*, 131 S. C., 403, 127 S. E., 836, and *Thomason v. Commonwealth Life Ins. Co.*, 168 S. C., 435, 167 S. E., 684, both of which cases deal with the question of reinstatement after lapse by waiver on the part of an agent,—no issue was presented suggesting a limitation upon the authority of the agent; and hence the question now before us was not considered or passed upon.

In *McGuinn v. Aetna Life Ins. Co.*, 171 S. C., 136, 171 S. E., 793, 795, the statement appears that "The soliciting agent of a life insurance company can waive a stipulation in the policy of insuranec that waiver may be made only by an executive officer of the company." This was also a reinstatement case based upon an alleged waiver by an agent. Two cases are cited in the opinion in support of the holding: *Fender case: Going v. Mutual Ben. Life Ins. Co.*, 58 S. E., 577, and *Gandy v. Orient Ins. Co.*, 52 S. C., 224, 29 S. E., 655.

An examination of the *Fender case* shows that the issue was whether an agent of the company had waived certain conditions precedent to the delivery of the policy, and the case was decided upon this issue. In support of the holding that the insurer may waive a condition precedent to the delivery of a policy, the following cases were cited in the *Fender case: Going v. Mutual Benefit Life Ins. Co.*, 58 S. C., 201, 36 S. E., 556; *Rogers v. Atlantic Life Ins. Co.*, 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172 and *Jennings*

*v. Clover Leaf Life and Cas. Co.,* 146 S. C., 41, 143 S. E., 668.

Furthermore, it appears from the opinion in *McGuinn v. Aetna Life Ins. Co., supra,* that the decision was not rested solely upon the ground of the power of a soliciting agent to waive a stipulation in the policy after delivery. The opinion contains this statement: "Moreover in the case at bar, there were very strong inferences, deducible from the evidence, that the local agent, who had the alleged conversations with the insured, and made with him the alleged agreement as to the reinstatement in full force of the policy, had authority to act especially for the insurance company in the transaction as to reviving the policy."

In *Gandy v. Orient Ins. Co., supra,* the Court made the line of demarcation even clearer. In that case, one for fire insurance (Jones, J.), it is said: "The question before us is not one of waiver by an agent of some matter occurring after the contract, inconsistent with the contract, and therefore it is out of our path to examine whether the agent may waive any provision of an insurance policy except in the way prescribed in the policy. The question before us is whether the principal is estopped by conduct to assert a forfeiture, the assertion of which is inconsistent with the principal's conduct in accepting the premium and delivering the policy as a valid policy, when, if the forfeiture was intended not to be waived such policy would be void in its inception." [52 S. C., 224, 29 S. E., 656.]

In the *Gandy case,* too, there was evidence tending to show that the agent not only had full power to solicit insurance and receive premiums, but was also authorized to write, countersign, and deliver policies of insurance, which to all intents and purposes made him a general agent. *Powell v. Continental Ins. Co.,* 97 S. C., 375, 81 S. E., 654.

In *Cope v. Jefferson Standard Life Ins. Co.,* 134 S. C., 532, 133 S. E., 440, 441, the statement appears: "An agent authorized to solicit insurance may waive forfeiture." And in support of this holding, the case of *Huestess v. South At-*

*lantic Life Ins. Co.,* 88 S. C., 31, 70 S. E., 403, 407, is cited. But an examination of the *Huestess case* shows that the Court immediately followed the above quoted statement by saying: "It does not, however, appear from the record that the presiding Judge rested his decision upon this ground." Nor does it appear that an issue was presented in either case suggesting a limitation in the policy upon the authority of the agent. Moreover the record in the *Huestess case* shows that the question at issue had to do with waiver of conditions precedent to the delivery of the policy.

The rule appears to be firmly settled in this State that an insurance company cannot set up forfeiture on account of facts known by the agent of the company to be existing at the time of making the contracts. *Pelzer Mfg. Co. v. Sun Fire Office,* 36 S. C., 213, 15 S. E., 562; *Pearlstine v. Phoenix Ins. Co.,* 74 S. C., 246, 54 S. E., 372; *Fludd v. Equitable Life Assurance Society,* 75 S. C., 315, 55 S. E., 762; *Rearden v. State Mut. Life Ins. Co.,* 79 S. C., 526, 60 S. E., 1106.

A different rule exists, as we have shown, where the forfeiture arises after the delivery of the policy, and a waiver or estoppel is claimed by reason of the acts and conduct of an agent with limited powers.

That a provision limiting the power of an agent has no sacrosanct character over any other provision, and like all of them is itself subject to waiver by the company, has been held in numerous cases. But where the restrictions upon the power of an agent appear in the policy, and the circumstances are sufficient to suggest an inquiry as to the limitation on his authority, notice of such limitation, in the absence of waiver by the company, will be imputed, and the party bound by the facts such inquiry would have disclosed if pursued.

The law undoubtedly is that Courts will liberally construe in favor of the insured acts or circumstances by the insurer indicating an election to waive forfeiture, but we can see no good reason why Courts

should refuse to enforce forfeitures plainly incurred, which have not been expressly or impliedly waived by the company or its agent acting within the scope of his authority.

Reference was made in the beginning of this opinion to the fact that the company had tendered to the respondent the sum of $20.14, which tender she refused. It appears that this tender was made because of an erroneous duplicate charge which appeared in the itemized statement of the settlement of the $1100.00 policy, and the refund of this amount was offered to her upon discovery of the error. The circumstances relating to it can in no way fix any liability upon the company with reference to the policy sued upon.

In our opinion, the evidence in this case is susceptible of no other reasonable inference than that the policy was not in force at the time of the death of the insured. The motion of the appellant for a directed verdict should have been granted.

The judgment of the lower Court is reversed, and the case remanded for entry of judgment in favor of appellant.

MESSRS. JUSTICES BONHAM and BAKER concur. MR. CHIEF JUSTICE STABLER dissents.

MR. JUSTICE CARTER did not participate on account of illness.