218 So.2d 453 (1969)
ENGLISH AND AMERICAN INSURANCE COMPANY Limited; Orion Insurance Company Limited  "T" Account; Orion Insurance Company Limited; Excess Insurance Company Limited; Employers' Surplus Lines Insurance Company; Edward Ernest Nelson, an Underwriter at Lloyd's London; World Auxilliary Insurance Company Limited; Andrew Weir Insurance Company Limited; London and Overseas Insurance Company Limited; Sphere Assurance Company Limited; and Fidelity General Insurance Company, Appellants,
v.
SWAIN GROVES, INC., Appellee.
Nos. 1229-1239.
District Court of Appeal of Florida. Fourth District.
January 13, 1969.
Rehearing Denied February 24, 1969.
*454 John T. Brennan, of Carlton, Brennan & McAliley, Fort Pierce, for appellants.
Richard V. Neill, of Fee, Parker & Neill, Fort Pierce, for appellee.
OWEN, Judge.
A suit on insurance policies resulted in eleven judgments for the plaintiff insured. The eleven appellants were unauthorized insurers who shared in varying percentages in two insurance contracts involving surplus lines coverage, in this case, hurricane insurance on citrus. Appellants, through a licensed surplus lines agent, issued the two policies to appellee insuring against loss by hurricane to grapefruit in appellee's grove No. 12 in St. Lucie County, Florida. In August, 1964, hurricane Cleo visited appellee's Grove No. 12. Appellee estimated the cost of entertaining this lady at 50,000 boxes of grapefruit, but appellants thought 40,000 boxes was a more likely figure. Appellants also felt that appellee should pick up a part of the tab by virtue of a co-insurance clause in the policies. These areas of disagreement were resolved by a jury which determined that appellants were correct in their estimate of the amount of loss but were incorrect in asking that appellee bear any part of it. By stipulation the parties had agreed that the court would determine, subsequent to verdict, the question of whether interest and attorneys' fees were allowable. At hearing on such motion the court allowed [and set the amount of] attorneys' fees and interest, following which the aggregate recovery to appellee was apportioned among the eleven insurers according to the percentage of risk which each had undertaken and eleven separate judgments entered accordingly. This is a consolidated appeal from such judgments.
Appellants present four points on this appeal. The first two concern the co-insurance clause of the policies. Appellants contend that the court erred in permitting into evidence certain parol testimony concerning conversations and transactions between appellee and the insurance agent which occurred prior to or at the time of the issuance of the policies, and that the court also erred in determining that a co-insurance clause of an insurance contract was subject to waiver and estoppel. By the last two points appellants question appellee's right to interest and attorneys' fees under the circumstances of this case. Although each of these points merit discussion, we *455 are of the opinion that the court did not commit reversible error and we therefore affirm the judgments.
Appellants' surplus lines coverage was available through Alto Adams and Associates, Inc. of Miami as licensed agents. The latter designated Burney-Cox Insurance, Inc., a Fort Pierce insurance agency, as exclusive sales agent within a four-county area including St. Lucie County. Burney-Cox sold appellee the insurance contracts involved in this case.
The contracts contained a co-insurance clause in the following language:
"The insured shall maintain contributing and collectible insurance on each item included under the heading `Citrus Fruit Insured' in the Schedule hereof of not less than 80% of the total amount of the value thereof; and, failing to do so, the Insured shall be an Insurer to the extent of such deficit and bear such proportionate part of loss on each such item."
There was no contractual provision as to how the "total amount of the value thereof" should be determined or by whom the determination was to be made. The contract did provide that grapefruit was to be valued at $1.75 per box. Appellee submitted an application for the citrus insurance on the grapefruit in Grove No. 12, using as a basis for valuing the crop, the previous year's production of 49,967 boxes. 80% of this figure at $1.75 per box yielded an adjusted value of $69,953.80, for which the policies were issued on August 15, 1964. Hurricane Cleo loss occurred 12 days later. No change was made in the crop valuation during the interval.
Following Hurricane Cleo the loss of grapefruit was estimated by appellants at approximately 40,000 boxes. However, at that time it was also determined that the total crop which had been on the trees prior to the hurricane loss was at least 80,000 boxes, which at $1.75 per box would have represented a total crop value of $140,000.00 minimum. The polices provided for a deductible equal to 10% of the total insurance stated in the polices. Although appellants initially denied the claim, approximately two months after the loss they offered to compromise on the basis of applying the co-insurance clause to the loss as estimated by them.
At the trial the court permitted, over appellants' objections, testimony from Burney and from officers of appellee corporation of an oral agreement made at or prior to the issuance of the policies concerning the procedure for establishing a valuation of the crop. The testimony disclosed that on July 31, 1964, the last day for binding such coverage, Burney was told by appellee's manager, Mr. Williams, that even though the appellee's officials understood the 80% co-insurance requirement, they had not estimated the current crop and consequently the compliance with such requirement presented a problem. Mr. Burney then suggested that the prior year's production figures be used for the initial binding of coverage and the issuance of the policies, and that subsequently an estimate of the crop could be made jointly by a representative of the insurance companies and Mr. Williams, at which time the amount of insurance and the amount of premium would be adjusted accordingly. The court also permitted, over appellant's objection, introduction into evidence of a letter Mr. Burney had written to Mr. Williams on June 24, 1964, which suggested that in order to determine the value of the crop, the prior year's production figures should be used and after the policy was issued arrangements could be made with General Adjustment Bureau [to go into the grove prior to any loss occurring] to determine the proper value with adjustments to be made accordingly.
The insurers could act only through agents. Their licensed surplus *456 lines agent was Alto Adams and Associates, Inc., which in turn had to act through one or more agents. The application for the insurance contained a notation indicating that Burney-Cox Insurance Agency, Inc. was exclusive agents representing Alto Adams and Associates, Inc. The solicitation for the insurance made reference to "the latest information concerning our citrus insurance." Burney was certainly an agent of Alto Adams and Associates, Inc. and hence a sub-agent of the insurers. Whatever Burney's real authority may have been, he had the apparent authority to solicit and sell the insurance, take applications, collect the premiums payable, bind coverage verbally, fill in any blanks in the policy when received by him, and deliver the policies to the insured. The evidence disclosed that at no time did Burney or Alto Adams and Associates, Inc. ever communicate to appellee any limitations on Burney's authority. Acts of an insurance agent within the scope of his real or apparent authority are binding upon his principal. The general public has a right to rely upon an agent's apparent authority and are not bound to inquire as to the special powers of the agent, unless circumstances are such as to put them upon inquiry. American Fire Insurance Company v. King Lumber and Manufacturing Company, 1917, 74 Fla. 130, 77 So. 168, affirmed 1919, 250 U.S. 2, 39 S.Ct. 431, 63 L.Ed. 810; Eagle Fire Co. v. Lewallen & Co., 1908, 56 Fla. 246, 47 So. 947.
Since Burney had the apparent authority to suggest that the prior year's production be used as the basis of determining the value of the crop, appellee had the right to rely thereon. The evidence of which appellants complain did not seek to contradict, vary, defeat or modify such co-insurance clause, but rather it sought to explain the meaning of the term "value of the crop" as it was intended by the parties at the time of entering into the contract. The policies did not specify how or when the current crop production was to be determined in order to ascertain the "value of the crop" and consequently extrinsic evidence was admissible to show the intent of the parties. 18 Fla.Jur., Insurance, Section 447.
Appellants next contend that the court erred in determining that the co-insurance clause was subject to the doctrines of implied waiver and estoppel. Appellants premise this point on the assumption that a co-insurance clause is a provision relating to the scope or limitation of coverage. Appellants then reason that this being true, there is authority holding that the doctrines of implied waiver and estoppel are not available to extend additional coverage to an insured. Reliance Mutual Life Insurance Company of Illinois v. Booher, Fla.App. 1964, 166 So.2d 222, 10 A.L.R.3d 458 is cited by appellants in support of this conclusion. On the other hand, appellee cites to us the cases of Russell v. Eckert, Fla.App. 1967, 195 So.2d 617, and Federal Crop Insurance Corporation v. Deerfield Groves Co., Fla.App. 1967, 195 So.2d 625, as authority that in Florida an insurer may be estopped by the actions of its agents to deny the basic fact of coverage.
We do not need to decide whether the doctrines of implied waiver and estoppel may be applied to coverage, as we disagree with appellants' major premise, i.e., that a co-insurance clause relates to the scope and limitation of coverage. It is our opinion that properly considered, the co-insurance clause involves a penalty or partial forfeiture. In the case of Home Insurance Company of New York v. Eisenson, 5 Cir.1950, 181 F.2d 416, the Fifth Circuit Court of Appeal in deciding a case which arose in Florida stated:
"In short, co-insurance clauses are designed to compel the insured, either as self insurer or otherwise, to carry insurance on the risk in an amount equal to the percentage of its value fixed by the particular clause. * * *" (Emphasis added.)
*457 In Vance on Insurance, at page 887 the author states:
"The co-insurance clause, requiring the insured to maintain insurance to an amount equal to his specified percentage of the value of the insured property, under penalty of becoming co-insurer to the extent of such deficiency, is valid unless its use is prohibited by statute."
A co-insurance clause being thus properly classified as a penalty or partial forfeiture, there is no question but that in Florida the doctrines of implied waiver and estoppel may be asserted as a defense when an insurer seeks to impose a forfeiture. Poole v. Travelers Insurance Co., 1937, 130 Fla. 806, 179 So. 138; Industrial Life & Health Insurance Co. v. Cofield, 1933, 110 Fla. 315, 148 So. 549; Reisman v. New Hampshire Fire Insurance Company, 5 Cir.1963, 312 F.2d 17.
Appellants next contend that the trial court should have allowed interest only from the date of the jury verdict, October 21, 1966, rather than from the first of January, 1965. In actions ex contractu it is proper to allow interest at the legal rate from the date the debt was due. The fact that there is an honest and bona fide dispute as to whether the debt is actually due has no bearing on the question. If it is finally determined that the debt was due, the person to whom it was due is entitled not only to the payment of the principal of the debt but also to the interest at the lawful rate from the due date thereof. Parker v. Brinson Construction Company, Fla. 1955, 78 So.2d 873. Whenever a verdict liquidates a claim and fixes it as of a prior date, interest should follow from that date. Everglade Cypress Company v. Tunnicliffe, 1933, 107 Fla. 675, 148 So. 192.
The policy in this case provided as follows:
"The amount of loss for which the Underwriters may be liable shall be payable sixty days after proof of loss, as herein provided, is received by the Underwriters and ascertainment of the loss is made either by agreement between the Insured and the Underwriters expressed in writing or by the filing with the Underwriters of an award as herein provided."
The insurance contract also provided that in case the insured and the underwriters should fail to agree as to the amount of the loss, then, on the written demand of either, each should select a competent and disinterested appraiser, who with a third to be selected, would then make an appraisal of the loss and arrive at a determination of an award. The parties were unable to agree as to the amount of the loss but neither initiated any action to have appraisers selected for the purpose of making an award.
The trial court held that the appellants had waived the requirement of proof of loss sometime during the month of October, 1964, either by accepting without objection the proof of loss form as submitted by appellee or by an admission of liability in some amount on the contracts. There is competent evidence to sustain this finding. In the case of Bear v. New Jersey Insurance Company, 1939, 138 Fla. 298, 189 So. 252, a somewhat similar factual situation was involved. It was held that upon the insurer admitting liability in some unagreed amount, such was sufficient to waive the formal proof of loss, and the insurer not making demand for appraisement within sixty days thereafter, the loss became payable at the end of such 60-day period. In the instant case, the trial court reached a similar conclusion ruling that the loss became payable not later than the last day of December, 1964, and allowed interest to run from January 1, 1965. This ruling was correct. See Employers' Liability Assurance Corporation v. Royals Farm Supply, Inc., Fla.App. 1966, 186 So.2d 317.
The final question involved the propriety of the award of attorneys' fees where *458 the non-admitted carriers complied with Section 626.0509, F.S. 1965, F.S.A. Appellants argument is that an attorney's fee is allowed in an action against an unauthorized foreign insurer only under the provisions of Section 626.0508, F.S. 1965, F.S.A., but that Section 626.0509, F.S. 1965, F.S.A. specifically exempts therefrom an action against an unauthorized insurer arising out of a contract of insurance issued under the surplus lines law under certain conditions [which existed in the instant case]. We pretermit a determination of whether appellants were exempt from Section 626.0508, F.S. 1965 by holding that the appellants were within the scope of Section 627.0127, F.S. 1965, F.S.A., [which provides for the award of attorneys' fees upon the rendition of a judgment against an insurer in favor of an insured].
The judgments are severally affirmed.
REED, J., and DYKES, ROGER, Associate Judge, concur.